4 A.3d 908

**STATE of Maryland**

v.

**Wilbert HARDY.**

**No. 148, Sept. Term, 2009.**

Court of Appeals of Maryland.

Aug. 27, 2010.

Reconsideration Denied Oct. 19, 2010.

614

Cathleen C. Brockmeyer, Asst. Atty. Gen. (Douglas F. Gansler, Atty. Gen. of Maryland, of Baltimore, MD), on brief, for Petitioner.

Brian M. Saccenti, Asst. Public Defender (Paul B. DeWolfe, Public Defender, of Baltimore, MD), on brief, for Respondent.

Argued before BELL, C.J., HARRELL, BATTAGLIA, GREENE, MURPHY, ADKINS and BARBERA, JJ.

HARRELL, J.

During the jury voir dire stage of his trial in the Circuit Court for Baltimore City on charges, among others, of carjacking, robbery, first degree assault, and reckless endangerment, Respondent, Wilbert Hardy, informed the judge that he was "thinking about changing [his] attorney or something."

Hardy explained the reasons underlying his dissatisfaction with his trial counsel. The court remonstrated that Hardy discharging his present counsel might prove deleterious to his defense. In response, Hardy abandoned any initiative to change his trial counsel and the trial continued, resulting in convictions on the above charges. Upon appellate review, we are asked to determine whether Hardy's statement that he was "thinking about changing [his] attorney or something" qualified as a request to discharge counsel under Maryland law and rules and, if so, whether the trial court addressed properly the request. For reasons we shall explain, we hold that: (1) Hardy's statement constituted a request to discharge defense counsel; (2) Maryland Rule 4–215(e),[1] which dictates the procedure a trial court must follow in response to a request to discharge counsel, does not apply after voir dire begins; and, (3) the trial court did not abuse its discretion in how it addressed Hardy's request to discharge his counsel during trial. As such, we reverse the judgment of the Court of Special Appeals that held, in pertinent part, to the contrary.

## I. FACTS

On 19 February 2006, around 1:30 a.m., an officer of the Baltimore City Police Department discovered Emmitt Camm

---

1. Maryland Rule 4–215, entitled "Waiver of counsel," provides, in pertinent part:

(e) Discharge of counsel—Waiver. If a defendant requests permission to discharge an attorney whose appearance has been entered, the court shall permit the defendant to explain the reasons for the request. If the court finds that there is a meritorious reason for the defendant's request, the court shall permit the discharge of counsel; continue the action if necessary; and advise the defendant that if new counsel does not enter an appearance by the next scheduled trial date, the action will proceed to trial with the defendant unrepresented by counsel. If the court finds no meritorious reason for the defendant's request, the court may not permit the discharge of counsel without first informing the defendant that the trial will proceed as scheduled with the defendant unrepresented by counsel if the defendant discharges counsel and does not have new counsel. If the court permits the defendant to discharge counsel, it shall comply with subsection (a)(1)-(4) of this Rule if the docket or file does not reflect prior compliance.
Md. Rule 4–215(e) (2007).

leaning against a gas station pump in the 2500 block of Liberty Heights Avenue in Baltimore. Camm appeared to have been beaten severely. Paramedics transported him to Sinai Hospital for treatment. Camm informed police that he had been driving his Ford Explorer when two men, one of whom he identified as an acquaintance, "Will," stopped him and asked for a ride. At some point during their travels thereafter, the men told Camm to pull over. Camm stopped the car and stepped out, at which time the men advanced on him and demanded his "property." The men threatened Camm with a knife, beat him, and threw him into the trunk of his car. Camm "got out somehow" and stumbled to the gas station where the police found him. All in all, the men stole Camm's wallet, cell phone, car keys, and vehicle. Approximately a month after the attack, Camm identified from a police photo array "Will" as the Respondent, Wilbert Hardy. Police arrested Hardy on 20 June 2006.

At the outset of Hardy's trial in the Circuit Court on 19 March 2007, immediately prior to the colloquy at issue in this appeal, the court swore the venire panel, introduced the factual allegations of the case to the venire, and proceeded to ask the venirepersons several questions and receive their responses. The court then asked counsel and Hardy to approach the bench to discuss further voir dire inquiries. At the bench, the following exchange commenced the colloquy that we consider pointedly in this case:

[DEFENSE COUNSEL]: Also, my client wanted to address the court.

THE COURT: About what?

[DEFENSE COUNSEL]: He won't tell me.

THE COURT: No. You sit down, sir. The only thing you should have addressed me on is whether you wanted that 12 years.[2] You not wanting it you're getting exactly what you asked for, a trial.

---

2. Presumably, Hardy rejected previously the State's plea offer of a sentence of 12 years.

[HARDY]: I'm saying I haven't changed about me wanting a trial. *I'm thinking about changing the attorney or something.*

THE COURT: Okay. Sit down a minute.

[HARDY]: She [my attorney] asking me about taking time. I'm not going to do this. That's what I'm saying.[3]

THE COURT: Well, sir, at this point actually, you only have two options. One is to discharge your lawyer and proceed to represent yourself, which I would not recommend. You have a constitutional right to represent yourself. But I don't feel that I am able to force her to sit at the trial table and assist you. Now if you have another lawyer who is ready, willing and able to step in her shoes, by all means, fire her if the other person is ready to step in.

[HARDY]: I'm not saying that—no disrespect—I'm saying, I haven't talked to my lawyer an hour in over a year. *I've had her for a year. I haven't even talked to my lawyer one hour.* I'm saying, that's no time to prepare a case. *I spoke to her 15 minutes* with her out in Hagerstown [a detention facility] because she had to leave. I can't prepare a case in 15 minutes (inaudible).

THE COURT: I can't believe that counsel would have only talked to you 15 minutes. Is that—

[DEFENSE COUNSEL]: No. We spoke—when I went to visit him in Hagerstown I was kicked out because there were—they ended it, but *we spoke for 20, 25 minutes. And we have spoken extensively on Friday* [16 March]. *That was well over an hour.*

---

**3.** The original trial transcript reads:
  [HARDY]: I'm saying, I haven't changed about wanting a trial. I'm thinking about changing the attorney.
  THE COURT: Okay. Sit down a minute.
  [HARDY]: (inaudible). That's what I'm saying.
As Hardy's statements in this regard are critical to this appeal, the parties requested that the court reporter review the audio recording of this exchange to determine what Hardy said where the transcript is marked "(inaudible)." The excerpt from the transcript recounted *supra* includes the corrections made by the court reporter on 10 May 2010 in response to this request.

THE COURT: See, sir, what you're saying is basically you're upset because you believe that her suggestion to you that you take time on this case she's trying to throw you. Is that what you're saying?

[HARDY]: I feel like she don't believe in me. You know what I'm saying. *She asked me to take time for something I didn't do.*

THE COURT: She's got to. The same way I had to go over what you were charged with, what the elements were and what the offer was so that you don't turn around and say, they never told me. You understand, sir? Ethically she's got to do that.

[HARDY]: She's been telling me about take the time every time I see her she says something about taking some time.

THE COURT: That's because you're exposed to so much more. That's why. She's a good lawyer.

[HARDY]: I'm not saying she's not a good lawyer. I'm just saying (inaudible).

THE COURT: She's going to work hard for you.

[HARDY]: All right.

THE COURT: She's only doing what anybody else does. A decision whether or not you want to take time is in your hands, not in her hands. You understand? That's why she's telling you. That's why I told you. So it couldn't come up later on, say, look, that judge didn't even tell me. You see?

[HARDY]: Yes, sir.

THE COURT: Okay. You all can step back.

(Emphasis added.)

The judge revisited the matter of Hardy's earlier expressed dissatisfaction with his defense counsel at the close of voir dire. The court asked counsel and Hardy to approach the bench to note any exceptions to the voir dire questions it had asked. After he gave the lawyers the opportunity to note these exceptions, the judge addressed Hardy:

THE COURT: ... [S]ir, do you feel better about—after talking to me about—

[HARDY]: (inaudible) wanted to finish talking to my attorney before I come back in the courtroom.

[DEFENSE COUNSEL]: We'll speak again during the lunch break.

THE COURT: Yeah, you will. To be quite honest, sir, she's only giving her—you, her opinion based on what she has seen me do to people involved in violent offenses with any record. She's just giving you her—you her honest opinion. You see what I mean. Nothing person[al], but she's really telling you the way it is.

[HARDY]: I understand what you're saying. (Inaudible.)

THE COURT: All right.

Hardy did not make any further statements during trial bearing on dissatisfaction with or discharging his counsel. The jury convicted Hardy on the specific counts mentioned at the outset of this opinion.[4]

## II. APPELLATE HISTORY

After he was sentenced, Hardy noted timely an appeal to the Court of Special Appeals, in which he alleged that four errors in the proceedings before the Circuit Court merited reversal of his convictions.[5] In an unreported opinion, the intermediate appellate court reversed Hardy's convictions and remanded the case to the Circuit Court for a new trial, holding

---

4. The jury acquitted Hardy on a charge of conspiracy to carjacking.

5. The Court of Special Appeals stated the alleged errors raised by Hardy as:

1. Whether the trial court erred in failing to follow the dictates of Md. Rule 4–215(e)[;]

2. Whether the trial court erred in refusing to grant a mistrial after jurors were given the verdict sheet prior to the start of trial[;]

3. Whether the trial court abused its discretion in giving preliminary instructions to the jury[; and,]

4. Whether the trial court erred in giving examples regarding the commission of a rape during the instructions to the jury[.]

that the trial court, in addressing Hardy's concerns regarding his trial counsel, failed to adhere to the mandatory procedures for consideration of requests to discharge counsel contained in Rule 4–215(e).[6]

The State filed timely a petition for writ of certiorari, which we granted, 411 Md. 740, 985 A.2d 538 (2009), to consider the following issues: (1) whether Hardy's statement that he was "thinking about changing the attorney or something" qualified as a request to discharge his counsel, (2) if so, whether Rule 4–215(e) applies to such requests after voir dire begins, and (3) if Rule 4–215(e) applies, whether the trial court's colloquy with Hardy complied with the Rule's mandates.

## III. STANDARD OF REVIEW

When applicable, Rule 4–215(e) demands strict compliance. "The provisions of the rule are mandatory" and a trial court's departure from them constitutes reversible error. *Williams v. State,* 321 Md. 266, 272, 582 A.2d 803, 806 (1990). Where a motion to discharge counsel is made during trial, however, Rule 4–215(e) does not apply, and we evaluate the trial court's ruling on a motion to discharge counsel under the far more lenient abuse of discretion standard. *State v. Brown* (hereinafter *"Brown "*), 342 Md. 404, 429, 676 A.2d 513, 525 (1996). We have noted that a court abuses its discretion in this regard only when it acts " 'without reference to any guiding rules or principles,' " *Brown v. State,* 373 Md. 234, 250, 817 A.2d 241, 250 (2003) (quoting *In re Adoption/Guardianship No. 3598,* 347 Md. 295, 312, 701 A.2d 110, 118 (1997)),[7] and that we find an abuse of discretion only when the court's

---

**6.** Having found reversible error in the trial proceedings based upon the first of Hardy's allegations, the Court of Special Appeals declined to consider the other three issues Hardy raised in his appeal on the ground that they were unlikely to reoccur in a new trial. Hardy does not seek review of those issues in this Court.

**7.** The parties in *Brown v. State,* 373 Md. 234, 817 A.2d 241 (2003), apparently are of no relation to those in *Brown,* 342 Md. 404, 676 A.2d 513 (1996), referred to frequently throughout this opinion.

act is so untenable as to place it " 'beyond the fringe of what the court deems minimally acceptable,' " *Brown v. State*, 373 Md. at 250, 817 A.2d at 250 (quoting *North v. North*, 102 Md.App. 1, 14, 648 A.2d 1025, 1032 (1994)).

## IV. ANALYSIS

As we shall explain, we hold that the trial court did not commit reversible error in its response to Hardy's request to discharge his trial counsel. As a threshold matter, we find that Hardy's statement regarding "thinking about changing [his] attorney or something" qualifies as a request to discharge counsel because a trial court reasonably should have interpreted it as such. We determine, however, that the court, in responding to Hardy's request, was not required to comply literally with the strictures of Rule 4–215(e) because the request was raised after the beginning of voir dire, which, in our view, constitutes a "meaningful trial proceeding." Accordingly, we review the trial court's handling of Hardy's request under an abuse of discretion standard. Finding none, we reverse the judgment of the Court of Special Appeals, which granted Hardy a new trial on its resolution of this issue alone.

### A. *Hardy's statement qualified as a request to discharge his counsel.*

At the outset, we address the threshold question of whether Hardy's statement regarding "thinking about changing [his] attorney or something" qualifies as a request to discharge counsel. We have observed that "any statement by the defendant from which the court could reasonably conclude that the defendant desire[s to discharge his counsel is] sufficient" for the court to consider that statement as a request to discharge counsel. *Snead v. State*, 286 Md. 122, 127, 406 A.2d 98, 101 (1979). There is no "talismanic phrase" that a defendant must utter to make such a request, *Leonard v. State*, 302 Md. 111, 124, 486 A.2d 163, 169 (1985); rather, the defendant need only indicate reasonably to the court a desire to discharge his or her counsel in order to engage the requirement that the court consider the defendant's motion. *State v.*

*Campbell,* 385 Md. 616, 631, 870 A.2d 217, 225 (2005); *see also Snead,* 286 Md. at 130, 406 A.2d at 102 (noting that former rule governing procedure for requests to discharge counsel is triggered "when a defendant indicates a *desire* or *inclination* to waive counsel" (emphasis added)). A defendant makes such a request even when his or her statement constitutes more a declaration of dissatisfaction with counsel than an explicit request to discharge. *See, e.g., Campbell,* 385 Md. at 632, 870 A.2d at 226 (finding request to discharge counsel when defendant stated "I don't like this man as my representative.... We had conflicts way before this ever started"); *Fowlkes v. State,* 311 Md. 586, 607, 536 A.2d 1149, 1160 (1988) (treating as request to discharge counsel defendant's statement that "[i]f possible I would rather get rid of her [my attorney], get new [sic] attorney"); *Leonard,* 302 Md. at 125, 486 A.2d at 170] (declaring request to discharge counsel "obvious" where defendant said "can I get appointed another counsel? ... Well, he's not representing me then"); *Snead,* 286 Md. at 131, 406 A.2d at 103 (finding request to discharge counsel when defendant said "I don't want no attorney then").

Hardy's statement here was hardly talismanic, but it communicated nevertheless his unhappiness (albeit a passing state of mind at the time) with his trial counsel clearly enough to constitute a request to discharge counsel. Although not worded as a decisional motion, Hardy's declaration that he was "thinking about changing the attorney or something" reasonably should have led a trial judge to conclude that Hardy wanted, or at the very least was inclined, to discharge his counsel. That is all that Maryland law requires in order for a court to consider his statement a request to discharge counsel and address the matter accordingly. As in *Campbell, Fowlkes, Leonard,* and *Snead,* Hardy's statement was an indication of dissatisfaction with his lawyer, and, likewise, Hardy's statement qualifies as a request to discharge defense counsel.[8]

---

8. The State insists that Hardy's statement was too vague and indecisive to amount to a request to discharge his attorney, and that it warranted

### B. *Rule 4–215(e) does not apply to requests to discharge counsel made after voir dire has begun.*

■ Having concluded that Hardy made a legitimate request to discharge his trial counsel, we must determine whether the trial judge's consideration of that request is governed purely by its discretion, or whether it should be circumscribed by the procedural demands of Rule 4–215(e), which provides, in relevant part:

> Discharge of counsel—Waiver. If a defendant requests permission to discharge an attorney ... the court shall permit the defendant to explain the reasons for the request. If the court finds that there is a meritorious reason for the defendant's request, the court shall permit the discharge of counsel; continue the action if necessary; and advise the defendant that if new counsel does not enter an appearance by the next scheduled trial date, the action will proceed to trial with the defendant unrepresented by counsel. If the court finds no meritorious reason for the defendant's request, the court may not permit the discharge of counsel without first informing the defendant that the trial will proceed as scheduled with the defendant unrepresented by counsel if the defendant discharges counsel and does not have new counsel.

Rule 4–215(e). As we shall explain, we conclude that Rule 4–215(e) does not apply literally once voir dire begins, and, therefore, the trial judge was not obliged necessarily to adhere to the Rule's strict procedural requirements in considering Hardy's request.

We have held that Rule 4–215(e) ceases to apply as soon as "meaningful trial proceedings" begin. *Brown*, 342 Md. at 427–28, 676 A.2d at 525.[9] We refused to draw a bright line

---

no inquiry by the court into Hardy's reasons for wanting to fire his lawyer. Even if Hardy did not intend to make such a request definitively, however, the fact that he was considering the possibility of discharging counsel suggests that some consideration by the court into his rationale was appropriate.

**9.** The *Brown* opinion seemed to consider the phrase "meaningful trial proceedings" as synonymous with the phrase "start of trial."

definition delimiting the precise moment that marks the beginning of "meaningful trial proceedings," *see id.* at 423, 676 A.2d at 522 (declining to adopt "an inflexible rule of *per se* untimeliness"), choosing rather to evaluate each situation on a case-by-case basis. Our case law makes clear that "meaningful trial proceedings" commence no later than by the time the court instructs the jury, *see State v. Wischhusen,* 342 Md. 530, 543, 677 A.2d 595, 601 (1996) (holding that "meaningful trial proceedings" had commenced by .time of potential motion to reinstruct the jury), and after the State begins to present evidence, *see Brown,* 342 Md. at 429, 676 A.2d at 525 (concluding that "meaningful trial proceedings" had commenced by time of request made after the State had presented evidence). Conversely, courts in this State have observed that "meaningful trial proceedings" have *not* commenced at the time of pretrial hearings, *see Joseph v. State,* 190 Md.App. 275, 288, 988 A.2d 545, 553 (2010) (applying Rule 4–215(e) to request raised at hearing "on the eve of trial"); *Hawkins v. State,* 130 Md.App. 679, 688, 747 A.2d 759, 764 (2000) (same; request was raised immediately before a suppression hearing), or at the defendant's first appearance on the morning of trial, *see Gonzales v. State,* 408 Md. 515, 537, 970 A.2d 908, 921 (2009) (applying Rule 4–215(e) on defendant's initial appearance before the trial court the morning of his trial).

We also have defined "meaningful trial proceedings" in a functional sense. Under this definition, "meaningful trial proceedings" have begun whenever allowing the defendant to discharge or substitute his legal counsel would pose a risk either of disruption of trial procedure or of confusing the jury. In *Brown,* for example, we cautioned that the right of a defendant to discharge his defense counsel should be limited once trial begins "to prevent undue interference with the administration of justice," particularly the defendant's "tactic[s] to delay the proceedings or to confuse the jury." 342 Md. at 414–15, 676 A.2d at 518.[10]

---

**10.** In *Chapman v. United States,* 553 F.2d 886 (5th Cir.1977), the case from which we drew the "meaningful trial proceedings" standard espoused in *Brown,* the Fifth Circuit reasoned that

With regard to requests to discharge defense counsel that are made during voir dire (such as Hardy's), we hold that Rule 4–215(e) does not apply because "meaningful trial proceedings" have commenced by the time of these requests. Admittedly, no controlling precedent dictates directly this result. Our cases establish clearly that "meaningful trial proceedings" have *not* begun before voir dire *commences* (at pre-trial hearings and at a defendant's first appearance in court on the morning of his or her trial) ·and that they *have* begun after voir dire *concludes* (after the State presents evidence and during jury instructions), but the question of whether they have begun at a point *during* voir dire is one of first impression in this State.[11]

---

[i]f there is to be a Rubicon beyond which the defendant has lost his unqualified right to defend pro se, it makes far better sense to locate it at the beginning of defendant's trial.... [A] mid-trial change to a pro se defense may be thought to disrupt the continuity of ongoing proceedings....

*Id.* at 894. The court also suggested that the critical factor in determining the point during trial at which the die is cast and a defendant's right to represent himself or herself should be curtailed is whether there is " 'danger of disrupting proceedings already in progress' " at that point. *Id.* (quoting *United States ex rel. Maldonado v. Denno,* 348 F.2d 12, 16 (2d Cir.1965)).

11. The law on this issue among other jurisdictions facing the same or similar issue is in conflict. The State cites a number of federal and state cases in support of the proposition that meaningful trial proceedings begin with the process of selecting a jury. *See, e.g., United States v. Walker,* 142 F.3d 103, 108–09 (2d Cir.1998) (holding meaningful trial proceedings had commenced when a request to discharge counsel was raised after 19 days of voir dire); *United States v. Lawrence,* 605 F.2d 1321, 1325 (4th Cir.1979) (noting meaningful trial proceedings had "consumed one day during which counsel had conducted their voir dire examination"); *Commonwealth v. El,* 602 Pa. 126, 977 A.2d 1158, 1163 (2009) (stating that "proceedings become 'meaningful' as soon as the selection of jurors begins"); *Edwards v. Commonwealth,* 49 Va.App. 727, 644 S.E.2d 396, 401 (2007) (suggesting the typical beginning of meaningful trial proceedings is the beginning of voir dire or the introduction of the courtroom participants before the venire). Hardy, meanwhile, cites an equally formidable list of cases that hold that meaningful trial proceedings begin only after a jury is selected and sworn. *See, e.g., United States v. Bishop,* 291 F.3d 1100, 1114 (9th Cir.2002) (holding requests to proceed pro se timely if raised before the jury is selected or empaneled); *Chapman,* 553 F.2d at 887 (holding that a jury must be selected before meaningful trial proceedings begin);

Two considerations inform our conclusion that the proper resolution of this issue is that "meaningful trial proceedings" *have* begun when a request to discharge counsel is made during voir dire. First, voir dire is a "meaningful trial proceeding" under the plain meaning of the phrase. There can be no trial without a trier of fact, and there can be no trier of fact in a jury trial without the jury selection process of voir dire. As such, the voir dire process represents a necessary step in any jury trial, and, therefore, with the beginning of voir dire, meaningful trial proceedings must have begun.

Second, voir dire is a "meaningful trial proceeding" under the functional definition of the phrase. In situations where Rule 4–215(e) applies, it permits essentially a criminal defendant to discharge defense counsel almost at will. When the process of jury selection begins, however, the soon-to-be members of the jury share the courtroom with the defendant and defense counsel. From this point on, allowing the defendant to change at will his or her representation, as Rule 4–215(e) permits, would risk confusing the prospective jurors, one of the concerns against which *Brown* warns. For example, jurors simply may become confused by seeing the defendant appear with an attorney one moment and without one the next, or, because defense counsel's trial strategy may affect the questions and challenges posed during voir dire, jurors may be confused when a defendant's motion to discharge counsel is granted and defendant embarks on abrupt and apparent change to that strategy. In addition, allowing such a change to defense counsel after the entire venire panel is summoned to the courtroom poses a considerable risk of disruption to the trial proceedings in that courtroom, to the court's jury assignment system (as it is compelled to work around the court's consideration of the defendant's request), and to the court's administration as a whole.

---

*Applegate v. Commonwealth*, 299 S.W.3d 266, 273 (Ky.2009) (defining beginning of meaningful trial proceedings as when the jury is selected or empaneled); *State v. Lamar*, 205 Ariz. 431, 72 P.3d 831, 836 (2003) (finding meaningful trial proceedings begin when the jury is empaneled).

To avoid the dangers of confusion to the jury and disruption of trial proceedings that *Brown* counsels against, and in accordance with the plain meaning of the words of the applicable rule, we hold that "meaningful trial proceedings" have begun after a trial court has begun the voir dire process in a criminal trial. As such, Rule 4–215(e) does not apply literally here to the court's consideration of Hardy's motion to dismiss his trial counsel, which was brought after several voir dire questions had been asked. As noted *supra*, because Rule 4–215(e) does not apply, we consider next whether the trial court's consideration of Hardy's request to discharge counsel was a proper exercise of its discretion.

C. *The trial court did not abuse its discretion in addressing Hardy's request to discharge his defense counsel.*

When a defendant makes a request to discharge counsel at a time when Rule 4–215(e) does not apply strictly, "[t]he court must conduct an inquiry to assess whether the defendant's reason for dismissal of counsel justifies any resulting disruption" and rule on the request exercising broad discretion. *Brown*, 342 Md. at 428, 676 A.2d at 525. The court's burden in making this inquiry is to provide the defendant the opportunity to explain his or her reasons for making the request; in other words, the court need not do any more than supply the forum in which the defendant may tender this explanation. *See Campbell*, 385 Md. at 635, 870 A.2d at 228 (stating that "the trial judge was not required to make any further inquiry" after the defendant made clear his reasons for wanting to dismiss his counsel); *Brown*, 342 Md. at 430, 676 A.2d at 526 (describing court's burden as duty to *"provide an opportunity* for [the defendant] to explain his [or her] desire to discharge counsel" (emphasis added)).[12]

---

12. We agree with the State's suggestion that it is the defendant's duty to explain fully the reasons for the request after this opportunity has been provided, rather than there being a continuing burden on the trial judge to probe the defendant with questions until the defendant has given a fuller answer. Not only would it be difficult to determine the precise

If the court provides this opportunity, how to address the request is left almost entirely to the court's "sound discretion." *Brown*, 342 Md. at 426, 676 A.2d at 524. According to *Brown*, the court should consider six factors in exercising its discretion in this regard:

(1) the merit of the reason for discharge; (2) the quality of counsel's representation prior to the request; (3) the disruptive effect, if any, that discharge would have on the proceedings; (4) the timing of the request; (5) the complexity and stage of the proceedings; and (6) any prior requests by the defendant to discharge counsel.

342 Md. at 428, 676 A.2d at 525. All six of these factors, however, may be considered in a brief exchange between the court and the defendant about the defendant's reasons for requesting the dismissal of defense counsel. For example, in *Campbell*, the defendant was allowed to explain at the close of the State's case why he believed his attorney was not acting in his interest. 385 Md. at 623–24, 870 A.2d at 221. The court then replied "we are beyond that at this point, sir.... He is representing you." *Id.* at 624, 870 A.2d at 221. We found that the trial court considered adequately within this brief exchange the six *Brown* factors and, as such, exercised properly its discretion in denying the defendant's request, *id.* at 636, 870 A.2d at 228, even though it did not inquire into the reasons for the request beyond the defendant's brief explanation of them, and did not announce the reasons for its denial of the defendant's motion beyond the short assertion that the defendant's counsel "hasn't done anything to not represent you," *id.* at 624, 870 A.2d at 221.

From this principle, it follows that trial courts abuse their discretion when they fail to allow a defendant any opportunity to explain his or her request at all, thus making it impossible to consider the six factors in *Brown*. In that case,

point at which this proposed mandatory line of questioning should cease, but there is no reason that a defendant with valid cause for dismissing his or her attorney should not be forthcoming with all of his or her reasons for requesting that dismissal.

we found that the trial court abused its discretion under just such circumstances. After the close of the State's case, Brown's lawyer told the court that Brown wished to dismiss him. *Brown,* 342 Md. at 429, 676 A.2d at 526. The court asked the lawyer the reasons for the request, to which the lawyer responded "I guess on the advice of his father [who had spoken to him in court that day]." *Id.* The court replied, "We are in the middle of trial. We will proceed. Go ahead.... You are still counsel...." *Id.* at 429–30, 676 A.2d at 526. We held that the court abused its discretion because its inquiry was "superficial" and did not adequately provide the defendant an opportunity to explain completely his request. *Id.* at 431, 676 A.2d at 526.

In the present case, the trial court did not abuse its discretion by handling Hardy's request to discharge his counsel as it did. Hardy's main contention is that the judge never asked him directly for an explanation of the reasons underlying his desire to discharge his attorney. Hardy, however, explained those reasons anyway, albeit on his initiative. While *Brown* states that the court must "conduct an inquiry" into requests like Hardy's, *id.* at 428, 676 A.2d at 525, we have held—in *Brown* itself and elsewhere—that the only burden this places on the court is the duty to *provide an opportunity* for the defendant to give an explanation. The trial court here carried that burden. It did not order Hardy to silence when he began to give the reasons for his request; rather, it allowed Hardy to explain, as fully as he chose, those reasons before continuing with the trial. That the court did not ask a question that led to this explanation is inconsequential on this record. The purpose of the requirement that the court inquire into the reasons for a request to discharge defense counsel is to elicit precisely the kind of response that Hardy gave here voluntarily. That response having been given as fully as Hardy desired and voluntarily, the trial judge in this case fulfilled his duty to provide Hardy the opportunity to explain his request.

As the court did not foreclose Hardy's opportunity to explain his request to discharge counsel, it committed no reversible error. Although earlier in the proceedings it appeared as though the judge might foreclose such contentions without any consideration whatsoever, the court allowed Hardy to explain his request without interruption. The court, in fact, asked more questions of Hardy and of his counsel to clarify Hardy's explanation than did the court in *Campbell.* Unlike the court in *Brown,* the judge here allowed Hardy to explain his motion without interruption, after which it considered the motion briefly and discussed with Hardy the dangers of proceeding as a self-represented defendant, at which point Hardy (presumably appreciating the wisdom of proceeding with counsel) abandoned his request. Because the court provided Hardy with sufficient opportunity to explain himself, it did not abuse its discretion in addressing Hardy's motion to dismiss his trial counsel as it did.[13] Therefore, we reverse the judgment of the Court of Special Appeals, which granted Hardy a new trial. Because the intermediate appellate court

---

**13.** Hardy contends also that the trial court should have conducted further inquiry into the question of how much time he and defense counsel spent together in preparation for the trial, and of whether that amount of time (in view of the significance and number of charges facing Hardy) was so limited as to render ineffective defense counsel's assistance to Hardy. In effect, Hardy asks us to mandate that trial courts conduct a sort of "trial within a trial" if defendants raise claims regarding the alleged ineffective assistance of defense counsel during trial proceedings. We decline to impose any such requirement. To compel these subordinate proceedings during trial would present an undue burden on the court, a certain disruption to the trial process, and a procedural quirk ripe for abuse by defendants seeking to introduce error or delay the conduct of their trials. Moreover, such a requirement would contradict directly our frequently repeated rule "that a claim of ineffective assistance of counsel generally should be raised in a post-conviction proceeding," *Smith v. State,* 394 Md. 184, 199, 905 A.2d 315, 324 (2006), where evidence concerning the effectiveness of counsel's representation is likely to be clearer. Hardy may have grounds to bring a post-conviction action under Maryland Code (2001, 2008 Repl. Vol.), Criminal Procedure Article, § 7–102(a)(4), but he is not entitled to a new trial simply because the court did not consider in greater depth his incipient claim that he was not represented effectively by his defense counsel.

did not address Hardy's three other claims of trial error, it must, on remand, consider them.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS VACATED; CASE REMANDED TO THAT COURT FOR FURTHER PROCEEDINGS NOT INCONSISTENT WITH THIS OPINION; COSTS TO BE PAID BY RESPONDENT.**

BELL, C.J., GREENE and ADKINS, JJ., Concur and Dissent.

BELL, C.J., which GREENE, J. joins and ADKINS, J. joins in Part III.

This case requires this Court to determine when "meaningful trial proceedings," as defined and discussed in *State v. Brown*, 342 Md. 404, 676 A.2d 513 (1996), have begun. In particular, the question is whether "meaningful trial proceedings" begin before the actual trial starts, with or at least during *voir dire*, before the jury has been empaneled and sworn. The applicability of Maryland Rule 4–215 (2005)—Waiver of counsel [1]—and the need strictly to comply with its

---

1. Maryland Rule 4–215, in effect at the time of the defendant's trial provided: "Waiver of counsel."

   "(a) First appearance in court without counsel. At the defendant's first appearance in court without counsel, or when the defendant appears in the District Court without counsel, demands a jury trial, and the record does not disclose prior compliance with this section by a judge, the court shall:
   "(1) Make certain that the defendant has received a copy of the charging document containing notice as to the right to counsel.
   "(2) Inform the defendant of the right to counsel and of the importance of assistance of counsel.
   "(3) Advise the defendant of the nature of the charges in the charging document, and the allowable penalties, including mandatory penalties, if any.
   "(4) Conduct a waiver inquiry pursuant to section (b) of this Rule if the defendant indicates a desire to waive counsel.
   "(5) If trial is to be conducted on a subsequent date, advise the defendant that if the defendant appears for trial without counsel, the court could determine that the defendant waived counsel and proceed to trial with the defendant unrepresented by counsel.

"The clerk shall note compliance with this section in the file or on the docket.

"(b) Express waiver of counsel. If a defendant who is not represented by counsel indicates a desire to waive counsel, the court may not accept the waiver until it determines, after an examination of the defendant on the record conducted by the court, the State's Attorney, or both, that the defendant is knowingly and voluntarily waiving the right to counsel. If the file or docket does not reflect compliance with section (a) of this Rule, the court shall comply with that section as part of the waiver inquiry. The court shall ensure that compliance with this section is noted in the file or on the docket. At any subsequent appearance of the defendant before the court, the docket or file notation of compliance shall be prima facie proof of the defendant's express waiver of counsel. After there has been an express waiver, no postponement of a scheduled trial or hearing date will be granted to obtain counsel unless the court finds it is in the interest of justice to do so.

"(c) Waiver by inaction—District Court. In the District Court, if the defendant appears on the date set for trial without counsel and indicates a desire to have counsel, the court shall permit the defendant to explain the appearance without counsel. If the court finds that there is a meritorious reason for the defendant's appearance without counsel, the court shall continue the action to a later time, comply with section (a) of this Rule, if the record does not show prior compliance, and advise the defendant that if counsel does not enter an appearance by that time, the action will proceed to trial with the defendant unrepresented by counsel. If the court finds that there is no meritorious reason for the defendant's appearance without counsel, the court may determine that the defendant has waived counsel by failing or refusing to obtain counsel and may proceed with the trial only if (1) the defendant received a copy of the charging document containing the notice as to the right to counsel and (2) the defendant either (A) is charged with an offense that is not punishable by a fine exceeding five hundred dollars or by imprisonment, or (B) appeared before a judicial officer of the District Court pursuant to Rule 4–213(a) or before the court pursuant to section (a) of this Rule and was given the required advice.

"(d) Waiver by inaction—Circuit court. If a defendant appears in circuit court without counsel on the date set for hearing or trial, indicates a desire to have counsel, and the record shows compliance with section (a) of this Rule, either in a previous appearance in the circuit court or in an appearance in the District Court in a case in which the defendant demanded a jury trial, the court shall permit the defendant to explain the appearance without counsel. If the court finds that there is a meritorious reason for the defendant's appearance without counsel, the court shall continue the action to a later time and advise the defendant that if counsel does not enter an appearance by that time, the action will proceed to trial with the defendant unrepresented by counsel. If the court finds that there is no meritorious reason for the defendant's appearance without counsel, the court may determine that the defendant has waived counsel

prescription is dependent on the answer to this inquiry. If the *voir dire* stage of trial is the beginning of "meaningful trial proceedings," whether the trial court abused its discretion in responding to a defendant's communication to the court of his intention to "chang[e] [his] attorney" is the relevant inquiry.

In the case *sub judice*, the defendant, Wilbert Hardy, voiced his displeasure with counsel, near the beginning of the *voir dire* process, after only four or five questions had been asked. His basis for displeasure was two-fold. First, he did not feel that his attorney had adequately prepared for his case, or had adequate time to do so. According to the defendant, during the year that counsel had been representing him, she had only spent fifteen minutes speaking to him.[2] Second, the defendant felt that his attorney did not "believe in [him]." This was prompted by the defendant's perception that his attorney was continuously advising that, as he put it, he "take time for something [he] didn't do." This resulted in the following colloquy:

> by failing or refusing to obtain counsel and may proceed with the hearing or trial.
> "(e) Discharge of counsel—Waiver. If a defendant requests permission to discharge an attorney whose appearance has been entered, the court shall permit the defendant to explain the reasons for the request. If the court finds that there is a meritorious reason for the defendant's request, the court shall permit the discharge of counsel; continue the action if necessary; and advise the defendant that if new counsel does not enter an appearance by the next scheduled trial date, the action will proceed to trial with the defendant unrepresented by counsel. If the court finds no meritorious reason for the defendant's request, the court may not permit the discharge of counsel without first informing the defendant that the trial will proceed as scheduled with the defendant unrepresented by counsel if the defendant discharges counsel and does not have new counsel. If the court permits the defendant to discharge counsel, it shall comply with subsections (a)(1)-(4) of this Rule if the docket or file does not reflect prior compliance."
> Md. Rule 4–215 (2005).

> 2. After the trial judge expressed disbelief that this was so, counsel modified the defendant's statement adding that the jail visit lasted twenty to twenty-five minutes, and that, shortly before trial, she had spent over an hour with her client. I note that this modification did not significantly or substantively refute the defendant's statement.

"THE COURT: See, sir, what you're saying is basically you're upset because you believe that her suggestion to you that you take time on this case she's trying to throw you. Is that what you're saying?

"THE DEFENDANT: I feel like she don't believe in me. You know what I'm saying. She asked me to take time for something I didn't do.

"THE COURT: She's got to. The same way I had to go over what you were charged with, what the elements were and what the offer was so that you don't turn around and say, they never told me. You understand, sir? Ethically she's got to do that.

"THE DEFENDANT: She's been telling me about take the time every time I see her she says something about taking some time.

"THE COURT: That's because you're exposed to so much more. That's why. She's a good lawyer.

"THE DEFENDANT: I'm not saying she's not a good lawyer. I'm just saying (inaudible).

"THE COURT: She's going to work hard for you.

"THE DEFENDANT: All right.

"THE COURT: She's only doing what anybody else does. A decision whether or not you want to take time is in your hands, not in her hands. You understand? That's why she's telling you. That's why I told you. So it couldn't come up later on, say, look, that judge didn't even tell me. You see?

"THE DEFENDANT: Yes, sir.

"THE COURT: Okay. You all can step back."

At the conclusion of *voir dire,* the trial judge called the defendant and his counsel to the bench and the following colloquy ensued:

"THE COURT: ... [S]ir, do you feel better about—after talking to me about—

"THE DEFENDANT: (inaudible) wanted to finish talking to my attorney before I come back in the courtroom.

"[DEFENSE COUNSEL]: We'll speak again during the lunch break.

"THE COURT: Yeah, you will. To be quite honest, sir, she's only giving her—you, her opinion based on what she has seen me do to people involved in violent offenses with any record. She's just giving you her—you her honest opinion. You see what I mean. Nothing person[al], but she's really telling you the way it is."

The Court of Specials Appeals held, in an unreported opinion, that Rule 4–215(e) remained applicable at the *voir dire* stage of trial and that the trial judge's failure to comply with the Rule's three-part test required reversal of the defendant's conviction.

This Court granted the State's Petition for Writ of Certiorari, *State v. Hardy*, 411 Md. 740, 985 A.2d 538 (2009), to address three questions:

"(1) whether [the defendant]'s statement that he was 'thinking about changing the attorney or something' qualified as a request to discharge his counsel, (2) if so, whether Rule 4–215(e) applies to such requests after voir dire begins, and (3) if Rule 4–215(e) applies, whether the trial court's colloquy with Hardy complied with the Rule's mandates."

Maj. op. at 621, 4 A.3d at 913. Answering the first, the majority holds, siding with the defendant, that "Hardy's statement constituted a request to discharge defense counsel[.]" *Id.* at 616, 4 A.3d at 910. On the remaining two issues, however, it sides with the State, concluding:

"Maryland Rule 4–215(e), which dictates the procedure a trial court must follow in response to a request to discharge counsel, does not apply after voir dire begins; and, ... the trial court did not abuse its discretion in how it addressed Hardy's request to discharge his counsel during trial."

*Id.* at 616, 4 A.3d at 910 (footnote omitted). I agree with the majority's resolution of the first issue. I, disagree, however, with the majority's conclusion, as well as its analysis, with regard to the second and third issues.

I believe, contrary to the majority, that Rule 4–215(e) does apply when discharge of counsel is raised during *voir dire* proceedings, and consequently, I believe that compliance by the trial judge is required. But even if, Rule 4–215 does not apply once *voir dire* has begun, it is my position that the trial judge here, instead of focusing on the concerns the defendant raised, *i.e.* whether there was good cause to warrant discharge of his counsel, pursued his own agenda. Essentially rejecting out of hand the complaints the defendant expressed, the trial judge set about to convince the defendant of the competence of his counsel, indeed vouching for her competence and justifying her actions, with the apparent goal, and seemingly the result, of convincing the defendant to keep her as his counsel. In so doing, the trial court stepped outside its role as a neutral arbiter and abused its judicial discretion. Therefore, either way this case is addressed, the trial judge acted improperly. Accordingly, the judgment of the Court of Special Appeals should be affirmed.

## I.   *Rule 4–215*

"A defendant's request to dismiss [ ] counsel implicates two rights that are fundamental to our system of criminal justice: the defendant's right to counsel, and the defendant's right to self-representation." [3] *Brown,* 342 Md. at 412–13, 676 A.2d at 517; *see also Faretta v. California,* 422 U.S. 806, 817, 95 S.Ct. 2525, 2532, 45 L.Ed.2d 562, 571 (1975) ("[I]mplicit also in the Sixth Amendment's guarantee of a right to the assistance of counsel, is 'the right of the accused personally to manage and conduct his own defense in a criminal case.' ") (quoting *United States v. Plattner,* 330 F.2d 271, 274 (2d Cir.1964)). Md. Rule 4–215 is triggered when a defendant expresses either of these interests. *Brown,* 342 Md. at 409, 676 A.2d at 516. The Rule prescribes what the trial court's mandatory responsibilities are

---

**3.** Although the two rights are mutually exclusive, *Leonard v. State,* 302 Md. 111, 119, 486 A.2d 163, 166 (1985) ("The rights are mutually exclusive and the defendant cannot assert both simultaneously"), they are, nevertheless, both triggered when a defendant voices dissatisfaction with his or her legal representation.

when that dissatisfaction, whether with counsel or because of the desire for self-representation, is expressed. *Broadwater v. State*, 401 Md. 175, 182, 931 A.2d 1098, 1102 (2007) ("Because the right to counsel is a 'basic, fundamental and substantive right,' the requirements of Maryland Rule 4–215 are 'mandatory and must be complied with, irrespective of the gravity of the crime charged, the type of plea entered, or the lack of an affirmative showing of prejudice to the accused.'") (quoting *Taylor v. State*, 20 Md.App. 404, 409, 411, 316 A.2d 296, 299, 300 (1974)); *Parren v. State*, 309 Md. 260, 280, 523 A.2d 597, 606 (1987) ("[O]ur rules 'are not guides to the practice of law but precise rubrics established to promote the orderly and efficient administration of justice and [they] are to be read and followed.'") (quoting *Isen v. Phoenix Assurance Co.*, 259 Md. 564, 570, 270 A.2d 476, 479 (1970)). The Rule provides, in the form of a " 'checklist' that a judge must complete before a defendant's waiver can be considered valid . . . ," *Broadwater*, 401 Md. at 215 n. 23, 931 A.2d at 1121 n. 23 (Bell, C.J., dissenting) (quoting *Johnson v. State*, 355 Md. 420, 426, 735 A.2d 1003, 1006 (1999)), " 'an orderly procedure to insure that each criminal defendant' " is aware of these rights. *Broadwater*, 401 Md. at 180–81, 931 A.2d at 1101 (quoting *Wright v. State*, 48 Md.App. 185, 191, 425 A.2d 1385, 1388 (1981)). Failure to adhere to Rule 4–215's mandate is reversible error. *Brye v. State*, 410 Md. 623, 637, 980 A.2d 435, 443 (2009).

If a defendant timely asserts his or her right to discharge counsel and have substitute counsel appointed or to proceed *pro se*, this request is usually honored and the Rule 4–215 checklist consulted. If it is not timely, then strict compliance with Md. Rule 4–215 is not necessary, as "the right to defend pro se and the right to obtain substitute counsel must be limited to prevent undue interference with the administration of justice." *Brown*, 342 Md. at 414, 676 A.2d at 518. As a marker for timeliness, as it pertains to Rule 4–215, the *Brown* Court, drawing from *Chapman v. United States*, 553 F.2d 886 (5th Cir.1977), determined that the appropriate inquiry is whether " 'meaningful trial proceedings have commenced.'"

*Brown,* 342 Md. at 423, 676 A.2d at 522. In *Brown,* we stated that this moment is some "point after trial begins." *Id.* at 414, 676 A.2d at 518.[4] The majority acknowledges, really concedes, that this Court has refused and continues to be unwilling, to "draw a bright line definition delimiting the precise moment that marks the beginning of 'meaningful trial proceedings.'" Maj. op. at 624–25, 4 A.3d at 915. Nevertheless, it significantly erodes the meaning of that phrase by specifically defining the beginning of *voir dire* as constituting "meaningful trial proceedings."

## II. *Voir dire is not "meaningful trial proceedings"*

As the majority acknowledges, if not expressly, implicitly, *Brown* controls the resolution of this case. There, before the State "completed the direct examination of the first witness," the defendant's counsel advised the court that his client, Brown, wanted to discharge him, *Brown,* 342 Md. at 410, 676 A.2d at 516, apparently because Brown's father felt that his son's counsel was "unfamiliar with the case." *Id.* The trial judge immediately denied the request, stating, "[w]e are in the middle of the trial. We will proceed. Go ahead." *Id.* at 429, 676 A.2d at 526. This Court granted certiorari to review whether Rule 4–215 applied "to decisions to dismiss counsel made after the trial has begun," *id.* at 409, 676 A.2d at 516, and, if it did not, the standard to apply when discharge of counsel is sought after the Rule ceased to have effect.

The Court held, first, that "the Rule does not apply after trial proceedings have commenced." *Id.* It reasoned: the application of Rule 4–215 must be limited in order to "prevent undue interference with the administration of justice." *Id.* at 414, 676 A.2d at 518. Thus, we opined that courts cannot entertain "'eleventh hour' requests to discharge counsel as a tactic to delay the proceedings or to confuse the jury." *Id.* at 414–15, 676 A.2d at 518. That would be a likely effect or consequence were Rule 4–215 to "appl[y] throughout the

---

**4.** Telling, I think, for purposes of this case, is the *State v. Brown,* 342 Md. 404, 676 A.2d 513 (1996), Court's use of the word "trial" and not "pre-trial."

trial[;] it would require the court to permit dismissal of counsel" as long as the defendant had a meritorious reason for doing so. *Id.* at 427, 676 A.2d at 525. This would "increase the risk of disruption and jury confusion, consequently increasing the risk of mistrial." *Id.* The *Brown* Court's reasoning made clear that it wanted to avoid the "unnecessary and cumbersome procedural obstacles" that exercising this Rule "throughout trial" would create. *Id.* at 427, 676 A.2d at 524–25.

The majority holds:

"To avoid the dangers of confusion to the jury and disruption of trial proceedings that *Brown* counsels against, and in accordance with the plain meaning of the words of the applicable rule, we hold that 'meaningful trial proceedings' have begun after a trial court has begun the voir dire process in a criminal trial. As such, Rule 4–215(e) does not apply literally here to the court's consideration of Hardy's motion to dismiss his trial counsel, which was brought after several voir dire questions had been asked."

Maj. op. at 628, 4 A.3d at 917.

While noting that "no controlling precedent dictates directly [its holding] result," *id.* at 626, 4 A.3d at 916, its reasoning and both of the "considerations," *id.* at 627–28, 4 A.3d at 916–17, emphasized by the majority to support its holding, depend upon this Court's analysis, and holding, in *State v. Brown,* 342 Md. 404, 676 A.2d 513 (1996). The majority's analysis of the issue and the path it forges to a conclusion are instructive in this regard.

The majority states that: "[t]wo considerations inform [its] conclusion." Maj. op. at 627, 4 A.3d at 916. Initially, it considers the "plain meaning of the phrase," [5] "meaningful trial proceedings," and opines that because, "[t]here can be no

---

5. An analysis of the plain meaning is usually relegated to statutory construction, and although the term as defined, will help shape the interpretation of Rule 4–215, the focus, I think should be on how this term was intended by *Chapman v. United States,* 553 F.2d 886 (5th Cir.1977), from which the *Brown* Court derived the "meaningful trial proceedings" standard.

trial without a trier of fact, and there can be no trier of fact in a jury trial without the jury selection" it is "a necessary step in any jury trial, and, therefore, with the beginning of voir dire, meaningful trial proceedings must have begun." *Id.*

The majority then turns to what it calls, "the functional definition of the phrase," *id.* at 627, 4 A.3d at 917, invoking what it sees will be a chaotic result if Md. Rule 4–215 is applied during *voir dire*. The majority notes, in that regard, that *Brown* concluded that the application of Rule 4–215(e) was limited to avoid confusing the prospective jurors, to decrease the "risk of disruption to the trial proceedings in [the] courtroom, to the court's jury assignment system . . . and to the court's administration as a whole." *Id.* Thus, the majority asserts that the "jurors simply may become confused by seeing the defendant appear with an attorney one moment and without one the next" and that the "trial strategy" may change, leaving the jurors again in a state of bewilderment. *Id.*

The concerns anticipated and addressed by the *Brown* Court are not present here. First, *Brown* directly contradicts the majority-it was beyond pre-trial; the trial, itself, had begun. The majority's contentions to the contrary notwithstanding, "the concerns against which *Brown* warns," *id.,*—juror confusion and undue interference with trial-simply are not present in this case. Notably, *voir dire* does not take place "throughout trial." It is a pre-trial proceeding. A request during *voir dire* does not raise *Brown*-like concerns about juror confusion or an "eleventh hour" delay.

Second, and in any event, I do not accept as accurate the majority's depiction of a perplexed, easily confused jury. *See* Maj. op. at 627, 4 A.3d at 917 ("For example, jurors simply may become confused by seeing the defendant appear with an attorney one moment and without one the next, or, because defense counsel's trial strategy may affect the questions and challenges posed during voir dire, jurors may be confused when a defendant's motion to discharge counsel is granted and defendant embarks on abrupt and apparent change to that strategy."). From the outset, a very basic point must be

made: in order to confuse the jury, there must be a jury. During *voir dire,* there are only venirepersons, prospective members of the jury; the panel has not yet been whittled down to form the petit jury. It follows, therefore, that, for purposes of discharging counsel, *voir dire* is not a "meaningful trial proceeding;" while it is critical that the jury not be tainted before it begins to hear a case, *see Waters v. State,* 51 Md. 430, 436 (1879) ("It is a fundamental principle underlying the trial by jury, that each juror shall so far as it is possible be entirely impartial and unbiased, in order that he may hear the evidence, and decide the matter in controversy uninfluenced by any extraneous considerations whatever. We say, so far as it is possible, for after all, it may not be practicable even by the most rigid rules of exclusion to secure that impartiality which the law in the abstract contemplates"), whether it will be tainted by discharge of counsel is a matter that *voir dire* will, or could, address. A defendant's access to effective counsel should not depend on, or take a backseat to, the potential—we have no idea whether, in fact, it will ever become reality—confusion of venirepersons, who may never hear his or her case, or any case, for that matter. *Brown* mentions only "jury confusion." Its silence on how discharge of counsel might affect venirepersons speaks volumes.

Third, as the majority notes, the *Brown* Court focused on avoiding "undue interference" and tactics to delay trial. *Brown,* 342 Md. at 412, 676 A.2d at 517; Maj. op. at 625–26, 4 A.3d at 916; *see also Sutton v. State,* 139 Md.App. 412, 435, 776 A.2d 47, 60–61 (2001), *cert. denied,* 366 Md. 249, 783 A.2d 223 (2001) ("A thorough reading of *Brown* establishes that the Court was concerned with the possibility of a defendant requesting a discharge of his counsel for no good reason other than for purposes of causing delay and confusion. This could be initiated by a desperate defendant in a last-minute effort to cause delays when he realizes his trial is not going his way. It is precisely this type of bad-faith legal maneuvering, when clearly not based on merit, that we aim to avoid."). This is key. It is the bad faith on the part of the defendant, and an intent to abuse the right to substitute counsel or to proceed

*pro se,* that is the concern to be addressed. There is no evidence, and the majority provides none, to suggest that the defendant intended, in the slightest, to delay the proceedings or that his request was a tactical means to thwart the progress of trial.[6]

Dismissing, or allowing the defendant to substitute, counsel for a meritorious reason does not cause undue delay. If the dismissal is meritorious, the delay is due because it is justified. To be sure, discharging or allowing the defendant to substitute counsel or allowing the defendant to proceed *pro se* could delay trial. The delay is undue only if there is no basis for the discharge request, only if it is unwarranted. If the discharge request is a tactic used to delay trial, then it is properly characterized as such and properly denied.

Furthermore, the test the majority adopts to define "meaningful trial proceedings," "a necessary step [of] jury trial," is not helpful. All aspects of trial are necessary for the trial to occur. For instance, if the trial was never placed on the calendar, then "there can be no trier of fact" and, indeed, no trial. Therefore, taken to its logical conclusion, under the majority's logic, because scheduling the trial is also a "necessary step in any jury trial," it, too, should be considered an

---

**6.** This record indicates just the opposite. After the defendant's request, and a brief discussion with the court, in which the court told the defendant that his counsel was "a good lawyer" and was "going to work hard for [him]," he responded: "All right." This colloquy demonstrates that the defendant merely wanted a counsel who "believe[d] in [him]." *See e.g. Sutton v. State,* 139 Md.App. 412, 436, 776 A.2d 47, 61 (2001), *cert. denied,* 366 Md. 249, 783 A.2d 223 (2001) ("In the instant case, there was no indication to the trial judge that appellant's request to proceed pro se would cause much delay. Additionally, the record does not demonstrate that appellant's request was due to an attempt to hinder the efficiency of his trial. It clearly appears from the record that appellant was genuinely concerned about his counsel's zeal in defending him, and whether counsel's perceptions were affecting his representation at trial."). That a defendant expresses his or her concern with counsel does not, and should not, indicate that he or she intends to, or wants to, disrupt the administration of justice. *See generally Faretta v. California,* 422 U.S. 806, 834, 95 S.Ct. 2525, 2541, 45 L.Ed.2d 562, 581 (1975) ("The defendant, and not his lawyer or the State, will bear the personal consequences of a conviction.").

example of a "meaningful trial proceeding;" under that logic, one would expect every facet of the trial process to be a "meaningful trial proceeding." Of course, our case law makes clear that the pre-trial stage of trial is not a "meaningful trial proceeding." *See e.g. Fowlkes v. State,* 311 Md. 586, 591, 536 A.2d 1149, 1152 (1988) (The Court properly applied Rule 4–215, after the defendant expressed, before *voir dire,* he wanted to "get [a] new attorney.").

As for the "functional definition," Maj. op. at 627, 4 A.3d at 917, adopted by the majority, the decision and analysis in *Chapman v. United States,* 553 F.2d 886 (5th Cir.1977), are instructive. It is the *Chapman* court, from which the *Brown* Court adopted the "meaningful trial proceedings" standard. *Brown,* 342 Md. at 423, 676 A.2d at 522 ("We agree with the view expressed by the United States Court of Appeals for the Fifth Circuit in *Chapman v. United States,* 553 F.2d 886 (5th Cir.1977). . . . Thus we believe the better approach is to assess whether 'meaningful trial proceedings have commenced,' rather than adopting an inflexible rule of *per se* untimeliness."). Review of *Chapman* makes clear that the *Brown* Court did not intend the *voir dire* stage of trial to be a "meaningful trial proceeding." In *Chapman,* the defendant asked to represent himself, "after his court appointed attorney [ ] announced [he was] 'ready for trial,' but before the jury [had] been empaneled." 553 F.2d at 887. The court held that "a demand for self-representation must be honored as timely if made before the jury is selected, absent an affirmative showing that it was a tactic to secure delay." *Id.* This holding, it opined, was "supported" by the Ninth, Second, and District of Columbia Circuits, which also held that the request is "timely if asserted before the jury is empaneled." *Chapman,* 553 F.2d at 894; *see United States v. Price,* 474 F.2d 1223, 1227 (9th Cir.1973); *United States ex rel. Maldonado v. Denno,* 348 F.2d 12, 16 (2d Cir.1965) (footnote omitted) ("We hold that if [the defendants] clearly sought to represent themselves, after their cases had been called on the calendar but before the jury had been chosen, they had an unqualified right to have their requests granted. At this stage there was no danger of disrupting

proceedings already in progress"); *United States v. Dougher-ty,* 473 F.2d 1113, 1119, 1124 (D.C.Cir.1972). Beyond support in other jurisdictions, the *Chapman* court acknowledged that its holding was grounded on the fact that

"[i]f there is to be a Rubicon beyond which the defendant has lost his unqualified right to defend pro se, it makes far better sense to locate it at the beginning of defendant's trial, *when the jury is empaneled and sworn,* than when defense counsel announces 'ready.' First, the declaration 'ready' at a calendar call bears no functional relation to the pro se right or to the actual beginning of trial; there may be many cases on a court's docket, and delays as long as the eleven days in this case between 'ready' and trial are not uncommon. Second, a defendant may not appear at calendar call, and his first opportunity directly to address the court regarding his counsel may be the day of his trial. Third, the defendant may acquire disconcerting information about the substance or manner of his counsel's planned defense only once his counsel begins the voir dire. Fourth, the expense of any delay rises dramatically once the jury is empaneled. Finally, a mid-trial change to a pro se defense may be thought to disrupt the continuity of ongoing proceedings, a danger not present when the defendant asserts his right to defend himself before the jury is sworn.

"Whatever significance ought to be placed on empaneling the jury, it would be particularly unfair to ascribe any significance to the declaration of 'ready' under the circumstances of the case at bar."

553 F.2d at 894–95 (emphasis added).

Like declaring "ready," the moment *voir dire* begins "bears no functional relation to the pro se right or to the actual beginning of trial." [7] *Id.* To be sure, *Chapman* was concerned with *pro se* representation. Its analysis of that issue, howev-

---

**7.** It is important to note that the court in *Chapman v. United States,* equated the empaneling and swearing of the jury, the "beginning of trial," 553 F.2d at 894, with when "meaningful trial proceedings" begin.

er, applies as well to the discharge of counsel in favor of a new attorney. Indeed, the reasons announced by the court as militating in favor of permitting *pro se* representation after counsel has indicated his readiness for trial, but before the jury has been empaneled and sworn, apply as much to the situation where there is a meritorious reason for discharge and substitution of counsel. Moreover, before the jury is empaneled and sworn a number of changes will occur. For example, and most important, many of the venirepersons will not become members of the petit jury. During the course of *voir dire*, and for various reasons, they will be stricken and removed.[8]

What is also clear from both the *Brown* and *Chapman* courts, and overlooked by the majority, is that *Brown* dealt with a situation that occurred after the actual start of trial and, in the case of *Chapman*, the court indicated that a motion to discharge counsel was timely until after jury selection had concluded. Nevertheless, in neither case did the court intend to establish a precise moment in time when "meaningful trial proceedings" would begin. The *Brown* Court invoked the "meaningful trial proceedings" standard in an effort not to "adopt[ ] an inflexible rule of *per se* untimeliness." *Brown*, 342 Md. at 423, 676 A.2d at 522. The *Chapman* court, some years before, had opined that "we have not entered the age of stop-watch jurisprudence." 553 F.2d at 895. The majority acknowledges that this Court has declined to establish a

---

8. In this case, only four or five questions had been asked. At this stage, moreover, the venirepersons are barely familiar with the process, the case, or their role in it. In addition, they are certainly not attached to the attorneys trying the case or aware of any strategy they might be employing. To them, it is unlikely that a change in who is asking the questions, who is utilizing the peremptory strikes and, maybe, the form and nature of the questions will have much resonance one way or another.

Furthermore, in some cases, the defendant will have multiple attorneys, each asking questions or playing an active role in pre-trial and trial proceedings. Similarly, there are cases in which there are multiple defendants, each with his or her own lawyer or team of lawyers. If this does not confuse the venirepersons, then a routine change of counsel certainly will not.

"precise moment that marks the beginning of 'meaningful trial proceedings'" yet, in its analysis and holding, the majority effectively does just that, it demarcates the beginning of *voir dire* as "meaningful trial proceedings." *Id.* at 625, 4 A.3d at 915 ("[W]e hold th[e] 'meaningful trial proceedings' have begun after a trial court has begun the voir dire process in a criminal trial."). Neither justifies the result, and, more important, *Brown* and the facts belie it.

Logically, "meaningful trial proceedings," in the discharge of counsel context, presupposes that trial proceedings have actually begun, but allows for a situation where trial has not begun in such a significant way or to the point where the sides are irretrievably fixed.[9] If a fixed point must be identified, when the jury is empaneled and sworn would be that point. This is after all, the point identified by *Chapman,* on which *Brown* relied, and, in a criminal jury trial, when double jeopardy attaches. *Illinois v. Somerville,* 410 U.S. 458, 467, 93 S.Ct. 1066, 1072, 35 L.Ed.2d 425, 433 (1973); *United States v. Jorn,* 400 U.S. 470, 479, 91 S.Ct. 547, 554, 27 L.Ed.2d 543, 553 (1971) ("These considerations have led this Court to conclude that a defendant is placed in jeopardy in a criminal proceeding once the defendant is put to trial before the trier of the facts, whether the trier be a jury or a judge"); *Hubbard v. State,* 395 Md. 73, 90, 909 A.2d 270, 279–80 (2006); *State v. Woodson,* 338 Md. 322, 329, 658 A.2d 272, 276 (1995).[10] Consistency, I believe, is important. Moreover, this point makes more sense than arbitrarily selecting the beginning of *voir dire,* when trial is but the goal, not a certainty, and, even when it occurs, not all of the venirepersons will remain participants.

---

**9.** Indeed, we issued certiorari to answer the question in *Brown* whether Rule 4–215 applies after trial had begun. It was in this context that we held that the Rule could still apply if "meaningful trial proceedings" had not yet occurred. Therefore, the "meaningful trial proceedings" to which we referred were those that would have occurred after the trial had begun.

**10.** Double jeopardy does not attach in a non-jury trial until "the judge begins to hear or receive evidence." *Blondes v. State,* 273 Md. 435, 444, 330 A.2d 169, 174 (1975).

The majority is correct: *Brown* is the point of reference for determining when in trial proceedings "meaningful trial proceedings" begin. The majority is wrong, however, in its application of *Brown*. The concerns on which *Brown* was focused are not presented in this case.

III.  *The trial judge abused his discretion, even if voir dire is a "meaningful trial proceeding."*

Even if the majority's premise that *voir dire* is the start of "meaningful trial proceedings" were correct, I believe that reversal of the trial court judgment nevertheless is required. It is true that, once the trial judge determines that "meaningful trial proceedings" have begun, Md. Rule 4–215 need not be complied with strictly. *Brown,* 342 Md. at 426, 676 A.2d at 524. In that event, it is the trial judge's exercise of discretion in addressing the defendant's request to discharge counsel that is the focus. In that sense, however, the defendant's right to change counsel still exists, but is subject to a different test. This only means, as *Brown* makes clear, that the trial judge's obligations and duties with regard to such requests are not defined by rule. That they exist and must be discharged can not be denied. The difference is that the question whether they have been discharged is judged by whether there has been compliance with the constitutional standard. *Id.* (citing *Johnson v. Zerbst,* 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461, 1466 (1938)).

In *Brown,* this Court held that, although strict compliance with Md. Rule 4–215 is not necessary once "meaningful trial proceedings" are underway, the trial court's discretion is not "limitless." 342 Md. at 428, 676 A.2d at 525. It pointed out, in that regard, that the "court must conduct an inquiry to assess whether the defendant's reason for dismissal of counsel justifies any resulting disruption. This inquiry must meet constitutional standards." *Brown,* 342 Md. at 428, 676 A.2d at 525 (citing *Johnson,* 304 U.S. at 464–65, 58 S.Ct. at 1023, 82 L.Ed. at 1466). Then, acknowledging "that there is little to guide the trial judge in the exercise of this discretion," we noted:

"in future proceedings, we suggest that the trial judge consider the following factors in deciding whether to permit discharge of counsel during trial: (1) the merit of the reason for discharge; (2) the quality of counsel's representation prior to the request; (3) the disruptive effect, if any, that discharge would have on the proceedings; (4) the timing of the request; (5) the complexity and stage of the proceedings; and (6) any prior requests by the defendant to discharge counsel. *See Sapienza v. Vincent,* 534 F.2d 1007, 1010 (2d Cir.1976); *People v. Cummings,* 4 Cal.4th 1233, 18 Cal.Rptr.2d 796, 850 P.2d 1, 57 (1993), *cert. denied,* [511] U.S. [1046], 114 S.Ct. 1576, 128 L.Ed.2d 219 (1994); *People v. Windham,* 19 Cal.3d 121, 137 Cal.Rptr. 8, 560 P.2d 1187, 1191–92 (1977), *cert. denied,* 434 U.S. 848, 98 S.Ct. 157, 54 L.Ed.2d 116 (1977). Generally, the longer the defendant waits to request discharge of counsel, the stronger the rationale must be to warrant counsel's dismissal."

*Id.* at 428–29, 676 A.2d at 525; *see also Campbell,* 385 Md. at 632–33, 870 A.2d at 226 ("In the exercise of discretion, the judge is required to 'conduct an inquiry to assess whether the defendant's reason for dismissal of counsel justifies any resulting disruption,' [*Brown,* 342 Md.] at 428, 676 A.2d at 525, through consideration of the ... factors."). The Court made clear that "although the trial judge need not engage in a full-scale inquiry pursuant to Rule 4–215, the judge must at least consider the defendant's reason for requesting dismissal before rendering a decision." *Brown,* 342 Md. at 431, 676 A.2d at 526; *see also Campbell,* 385 Md. at 636, 870 A.2d at 228.

The majority's take on this issue is particularly disturbing, especially its all but dispositive emphasis on the defendant's ability and opportunity to state the reasons for desiring discharge and the trial court's "broad discretion," Maj. op. at 628, 4 A.3d at 917, which, under the majority's formulation, is essentially unreviewable. *Id.* According to the majority, the "court's burden," once the defendant expresses dissatisfaction with counsel, is

"to provide the defendant the opportunity to explain his or her reasons for making the request; in other words, the

court need not do any more than supply the forum in which the defendant may tender this explanation."

*Id.*[11] Once the forum has been provided—and, presumably, the explanation given—it asserts, the "request is left almost entirely to the court's 'sound discretion.' "[12] *Id.* at 629, 4 A.3d at 918 (quoting *Brown,* 342 Md. at 426, 676 A.2d at 524). To be sure, the majority acknowledges that this Court, in *Brown,* formulated factors to be used by future courts faced with a discharge issue that has arisen after "meaningful trial proceedings" have begun as a guide for deciding those issues and, indeed, recognizes what we said on the subject, that the "court should consider [the] six [*Brown*] factors in exercising its

---

**11.** In a footnote, the majority, siding with the State, opines that the burden of disclosure lies with the defendant, and there is not "a continuing burden on the trial judge to probe the defendant with questions" to obtain "a fuller answer." Maj. op. at 628, 4 A.3d at 917 n. 12. This reinforces the majority's belief that the court need only "supply the forum" for the defendant to express his or her concerns and nothing more. The majority either misunderstands or disregards the teachings of *Brown.* As I show, *infra,* it is not for the defendant's purpose, to get, as the majority characterizes it, "a fuller answer," that the trial court was required to inquire further into the matter of counsel's preparation, it was, rather, to fulfill its obligation to consider, and, I submit, resolve, whether the defendant's complaint in that regard had merit. *See Brown,* 342 Md. at 431, 676 A.2d at 526 ("The onus, however, is not on Respondent to interrupt a discussion between the court and his attorney to offer an explanation, but rather the responsibility is on the trial judge to ensure that the reason for requesting dismissal of counsel is explained.").

**12.** The majority cites, for support, *State v. Brown,* 342 Md. at 426, 676 A.2d at 524. While *Brown* does stand for this general proposition, this Court later made clear that reviewability of the trial court's exercise of discretion was not simply desirable, but required. Thus, when we addressed the merits of the case under review, we made clear that the court's discretion is not without limit, that the court must conduct an inquiry to determine the merits of the defendant's request, *id.* at 428, 676 A.2d at 525, and that, "although the trial court need not state all its reasons for denying defendant's request to discharge counsel, the better practice is for the trial court to provide a sufficient rationale for its denial of substitution or pro se defense on the record to facilitate appellate review." *Id.* at 430 n. 13, 676 A.2d at 526 n. 13.

discretion." Maj. op. at 629, 4 A.3d at 918. Contradictorily, however, it holds that

> "trial courts abuse their discretion when they fail to allow a defendant any opportunity to explain his or her request at all, thus making it impossible to consider the six factors in *Brown.*"

*Id.* at 629–30, 4 A.3d at 918. Interestingly, it states that these factors "may be considered in a brief exchange between the court and the defendant," *id.* at 629, 4 A.3d at 918; significantly, the majority does not, because it cannot, say that the trial court considered those factors.[13] To it, it is sufficient that

---

**13.** It is clear that the trial court did not consider the *Brown* factors. The first of them required the trial court to address whether there was merit in the request or complaint. That could only be done by inquiring further when there is or likely will be a conflict on the facts surrounding the issue. To be sure the defendant stated his concern with regard to his counsel's preparation, to which counsel took some exception. The defendant also stated his concern that his counsel did not believe in him and was seeking to have him plead to an offense he did not commit. On neither occasion did the trial court consider the merits of those complaints, even when, as to the preparation issue, counsel's rebuttal did not substantially contradict the complaint. As we shall see, the court set about to do something entirely different from the brief the situation dictated, to convince the defendant to stay the course.

The defendant is correct in arguing that the trial court's inquiry was insufficient and, therefore, should have been more extensive. His point, however, is not, as the majority would have it, that the purpose of the inquiry was to buttress his complaint, rather, it was to determine whether the complaints the defendant raised had merit, something that the *Brown* court endorsed and indeed indicated should be done. *Brown,* 342 Md. at 431, 676 A.2d at 526. Nor is the majority correct about the trial court's duty in that regard. *Brown* made clear that, although Rule 4–215 did not mandate a specific colloquy or litany, the constitutional standard required an inquiry. *Id.* at 428, 676 A.2d at 525. It is not a matter for post-conviction when the challenged action is one required to be done at the time of trial. Moreover, this simply is not a case alleging ineffective assistance of counsel. To the contrary, what is alleged is a violation of the defendant's right to have the court consider whether he could discharge counsel, which he had a perfect right to pursue, and at the very time that he raised it. Post-conviction will provide no better evidence than that available now. Besides, it is the court's compliance, or not, with the constitutional standard, as explicated by *Brown,* that has to be determined; there are no tactical issues or further facts to be developed. *Williams v. State,* 394 Md. 98, 130, 904 A.2d 534, 553 (2006) (citing *Abeokuto v. State,* 391 Md. 289, 328, 893 A.2d 1018, 1042 (2006)); *Harris v. State,* 299 Md. 511, 517, 474 A.2d 890, 893 (1984) (citing *Harris v. State,* 295 Md. 329, 337–38, 455 A.2d 979, 983 (1983)). It is, after all, these extraneous and largely

there was an opportunity, however brief, in which they could have been considered and, of course, that the defendant was permitted to explain the basis of his dissatisfaction. In short, the majority holds that the trial court did not abuse its discretion because the defendant was able to explain his reasons and was not "order[ed] to silence ... before continuing with the trial," Maj. op. at 630, 4 A.3d at 918–19, thus fulfilling its duty.

This is not, and cannot be, the standard. First, it does not comply with our decision in *Brown* and the requirements it imposed. As we have seen, the Court formulated and set out factors to guide trial courts in their decision-making when faced with late discharge of counsel requests. One of these factors is "the merit of the reason for discharge." Why else would factors be formulated and offered for guidance if they were not expected or intended to be used? In addition, we indicated clearly that the exercise of discretion was not "limitless"—another reason for factors to guide its exercise. Finally, we indicated, again clearly, that review of the exercise of discretion should be possible. *See Brown,* 342 Md. at 428, 431, 676 A.2d at 525, 526. The majority simply ignores these *Brown* teachings.

The holding in this case simply does not make sense and it does nothing to protect or facilitate a defendant's right to effective counsel or to proceed *pro se.* All it does is permit the court passively to listen to a defendant's complaint or request without any obligation to consider or address it or its ramifications. This holding effectively instructs the trial courts simply to "provide a forum" where a defendant may vent, just to allow him or her to explain his or her dissatisfaction with counsel, and nothing more. Other than providing a forum, nothing more is required of the court; it need not, as the trial court did not do in this case, consider the *Brown* factors or respond in any way to the reasons offered or the complaints made by the defendant. Indeed, all this holding encourages is inaction, not the exercise of discretion. In fact,

covert matters that drive our "postpone for post-conviction" jurisprudence.

what the trial court did in this case was the very antithesis of exercising discretion on a request to discharge counsel.

In addition, the majority would subjugate a defendant's right to effective assistance of counsel and, therefore, a fair trial, clearly substantive matters, to judicial convenience and to when a complaint about counsel is made, purely procedural or matters of form. But the right to a fair trial, even when the issue at the center of the controversy is whether counsel is effective, is not subject to curtailment because of timing or judicial convenience. Whenever that issue is properly and timely presented and whenever it is a viable question, a court must address it. *Brown*, 342 Md. at 431, 676 A.2d at 526. I agree with the Court of Special Appeals that "superficial inquir[ies]," *Brown*, 342 Md. at 429, 676 A.2d at 525, will not do.

Similar to *Brown*, the trial judge "did not determine whether defendant was attempting to assert his right to proceed pro se or asking the court to appoint substitute counsel." [14] *Brown*, 342 Md. at 430, 676 A.2d at 526. That Court made clear that the trial court must afford the defendant "an opportunity to explain the reasons for his request," *Brown*, 342 Md. at 430, 676 A.2d at 526, and more important, rather than implicitly, expressly requiring that the request be considered, and, in context, resolved. *Id.* at 431, 676 A.2d at 526.

At first glance, *Brown* may seem more egregious than the case *sub judice*, because, in *Brown*, the court did not give the defendant the opportunity to address the court. The situation *sub judice* is, however, I submit, no less egregious. The inquiry conducted in this case was entirely and especially meaningless. To be meaningful, an inquiry must be more than an academic exercise, it must accomplish more than

---

**14.** Although, here it is likely that the defendant, by asking to discharge counsel, was asking to substitute his counsel, as the *Brown* Court acknowledged most denied requests for a new counsel, will result in a request to proceed *pro se. Brown*, 342 Md. at 416, 676 A.2d at 519 ("Frequently, denial of a defendant's request for substitute counsel leads to a request to defend pro se.").

provide a rationale to excuse a trial court's actions or inaction. Instead, it must be such as to recognize and vindicate the serious impact that the subject of the inquiry has on the defendant's right to counsel and to proceed *pro se*. *See generally Faretta,* 422 U.S. at 833, 95 S.Ct. at 2540, 45 L.Ed.2d at 580 ("[I]t is one thing to hold that every defendant, rich or poor, has the right to the assistance of counsel, and quite another to say that a State may compel a defendant to accept a lawyer he does not want. The value of state-appointed counsel was not unappreciated by the Founders, yet the notion of compulsory counsel was utterly foreign to them."). Therefore, matters affecting a defendant's liberty cannot be taken lightly. *See generally Faretta,* 422 U.S. at 821, 95 S.Ct. at 2534, 45 L.Ed.2d at 573–74 ("An unwanted counsel 'represents' the defendant only through a tenuous and unacceptable legal fiction. Unless the accused has acquiesced in such representation, the defense presented is not the defense guaranteed him by the Constitution, for, in a very real sense, it is not his defense."). Thus, a trial court's inquiry in response to a request to discharge can not be a "superficial inquiry." Here, to the extent the trial court inquired at all, it was superficial—he made no real attempt to determine the merits of the defendant's complaints. He was too busy trying to persuade the defendant to keep counsel, and that his reasons for dissatisfaction were not valid ones against a good attorney working in his interest.

*Campbell* is instructive. There, after the State presented its case-in-chief, the defendant, requested new counsel. 385 Md. at 623–24, 870 A.2d at 221. The trial court denied that request, but only after "[b]alancing the *Brown* factors against the countervailing considerations of permitting Campbell to discharge counsel." *Id.* at 635, 870 A.2d at 228. This Court held that "meaningful trial proceedings" had begun, therefore precluding the need for strict compliance with Rule 4–215. *Id.* at 634, 870 A.2d at 227. Nevertheless, we recognized that more was required of the trial judge than a simple recognition that Rule 4–215 does not apply. *Id.* at 632–33, 870 A.2d at 226. Accordingly, in affirming that ruling by the trial court,

we noted how it appropriately had addressed and balanced each of the *Brown* factors and the impact discharge of counsel would have had on the trial. *Id.* at 635–36, 870 A.2d at 228.

Here, the majority, like the trial court, failed to apply the *Brown* factors. The defendant advised the trial court that he was "thinking about changing [his] attorney or something," proffering two bases for that "thinking." To the first, that his attorney was unprepared, having spent a very limited amount of time consulting with him about the case, the trial judge expressed disbelief and then, when counsel's rebuttal did not substantially dispute the defendant's account, failed to follow up. To the second, the defendant's belief that counsel did not believe in him and, thus, was urging him to "take time" for a crime he did not commit, the court rationalized counsel's actions in urging the plea, stating that she has "got to . . . ethically" ask him to "take time" for an act the defendant persisted in insisting he did not do. It also vouched for defense counsel's competence, telling the defendant: "She's a good lawyer. . . . She's going to work hard for you. . . . She's only doing what anybody else does." This vouching survived *voir dire,* when the trial court added "[t]o be quite honest . . . she's only giving her . . . opinion based on what she has seen me do to people involved in violent offenses with any record. She's just giving you her . . . honest opinion." [15] By contrast, the record reflects no comparable attention paid to the factors this Court indicated should be considered. As noted already, the court did not follow up to determine the merits of the defendant's complaints, nor did it put the request into a time

---

**15.** When there is a request to discharge counsel made after "meaningful trial proceedings" have begun, the trial court is called upon to assess whether the balance of factors favor disruption of the trial. The factors do not include evaluation of the competence of counsel, although they do include the meritoriousness of the defendant's complaint. I believe that it is improper for a trial court, in this context and under the circumstances, to vouch for the defendant's counsel and his or her litigation tactics. This is especially so when one considers that the trial court could not, for a moment, know what type of client-lawyer relationship had been formed and whether counsel was giving her "honest opinion."

sequence. A fair reading of this record is that the court wanted very much to continue with the trial and that it was more concerned with that than with constitutional niceties. In so proceeding and by disregarding, in effect, if not intentionally, *Brown*, the court erred. The Court of Special Appeals got it right. I would affirm its judgment.

Judge GREENE joins the views herein expressed and Judge ADKINS joins Part III of this opinion.

ADKINS, J., Concurring and Dissenting.

I agree with the majority that there should be a bright-line test, and that the commencement of voir dire is the appropriate demarcation for the commencement of "meaningful trial proceedings" in a jury trial. Thus, I join Part IV, A and B, of the Majority opinion. I respectfully dissent, however, from the balance of the Majority opinion for the reasons set forth in Section III of the Dissent of Chief Judge Bell, which I join. I agree with him that even without the dictates of Rule 4–215, the trial court failed to make a proper inquiry about Hardy's claim that his counsel was inadequate. *See State v. Brown,* 342 Md. 404, 676 A.2d 513 (1996).