79 A.3d 931

**Melvin D. WILLIAMS**

v.

**STATE of Maryland.**

**No. 20, Sept. Term, 2013.**

Court of Appeals of Maryland.

Nov. 22, 2013.

476

Jeffrey M. Ross, Asst. Public Defender (Paul B. DeWolfe, Public Defender, Baltimore, MD), on brief, for petitioner.

Ryan R. Dietrich, Asst. Atty. Gen. (Douglas F. Gansler, Atty. Gen. of Maryland, Baltimore, MD), on brief, for respondent.

Argued before BARBERA, C.J., HARRELL, BATTAGLIA, GREENE, ADKINS, McDONALD, LAWRENCE F. RODOWSKY (Retired, Specially Assigned), JJ.

HARRELL, J.

Petitioner, Melvin D. Williams, was prosecuted in the Circuit Court for Harford County for controlled substance and resisting arrest offenses. Following his convictions, Williams appealed to the Court of Special Appeals arguing that: (1) the trial court violated Maryland Rule 4–215(e) by failing to respond to a letter he sent to the court, prior to trial, seeking to discharge his counsel, and (2) the evidence was insufficient to support his conviction on the charge of resisting a lawful arrest under Maryland Code (2002, 2011 Cum.Supp.), Criminal Law Article, § 9–408(b)(1). The intermediate appellate court affirmed the judgment of the trial court. Williams asks us to reverse on the grounds that the letter he sent to the trial court (filed in the case jacket) was sufficient to trigger Rule 4–215(e) and that the trial court's failure to conduct an inquiry consistent with the mandates of the Rule is reversible error. He asks us also to hold that the Court of Special Appeals erred when it held that the use of force element necessary to sustain a conviction for resisting arrest may be satisfied by the deployment of force against a civilian who assisted voluntarily the arresting law enforcement officers in the capture of Williams.

We hold that Williams's letter to the trial court was sufficient to trigger the rigors of Rule 4–215(e), and further that the trial court's failure to inquire into the reasons behind Williams's request to discharge counsel was reversible error. We hold also that, on this record, the intermediate appellate court did not misinterpret Maryland's resisting arrest statute. Accordingly, we reverse in part and affirm in part the judgment of the Court of Special Appeals and shall direct remand ultimately to the Circuit Court for further proceedings not inconsistent with our opinion.

## FACTUAL & PROCEDURAL BACKGROUND

On 8 October 2008, the State's Attorney for Harford County filed in the Circuit Court a four-count criminal information charging Melvin D. Williams with three controlled dangerous

substances offenses and one count of resisting a lawful arrest. John Janowich, Esquire, from the local Office of the Public Defender entered his appearance as Williams's counsel on 11 February 2009. On 27 January 2010, Williams sent from jail a letter that reads in its entirety:

Case No 12–K–08–1673

The Honorable Judge?? 1/27/2010

My name is Melvin Williams JR Im writting to request New representation From the Public defender's office. Pending me being able to afford an attorney. MR John Janowich has truly No interest on my behalf in trying to help me on my case. I truly feel Im being mis-represented. May U please remove him from my case. I'll truly be appreciated.

Sincerely Melvin Williams

This letter, filed in the court jacket, has a date stamp by the Circuit Court Clerk as being received on 29 January 2010. An entry on the docket confirms the Circuit Court's receipt of Williams's letter: "Letter of Defendant requesting new representation from the public defender's office. Filed: 1/29/10 Entered: 2/17/10." An additional notation in the same docket entry states "Copies sent to SAO, and PD 2/17/10," presumably meaning that the Clerk sent copies of Williams's letter to the State's Attorney's Office and the local Office of the Public Defender.[1]

There was utterly no response to Williams's letter documented. Mr. Janowich continued to represent Williams over the course of the next sixteen months, including a hearing in the Circuit Court on 7 June 2010, three subsequent hearings,

---

1. A notation at the bottom of the letter reads also "2/18/10 cc: SAO + PD." Despite the one-day discrepancy between the notations in the docket entry and on the letter itself, neither party disputes that copies of the letter were sent to the State's Attorney's Office and local Office of the Public Defender on or about 17–18 February 2010. Nowhere in the record before us, however, does the prosecutor, Janowich, or any of the judges who considered aspects of Williams's case admit to reading the letter prior to or during Williams's trial. For all we know, Williams's letter was something like a "message in a bottle" tossed in the ocean.

and a two-day jury trial.[2] There is no further mention in the record of Williams's letter by any of the four judges who presided over those various proceedings, by Janowich, by the assistant state's attorney who prosecuted the case, or by Williams.

At Williams's jury trial, two law enforcement officers testified to the following facts pertinent to the circumstances of Williams's arrest.[3] During the evening of 15 September 2008, Deputies Grant Krulock and Robert Schultz of the Harford County Sheriff's Office (collectively, "the Officers") were in uniform and on bicycle patrol in Edgewood, Maryland. At approximately 11:00 P.M., the Officers were talking to a group of civilians clustered around a van parked on the side of Fountain Rock Way. During this conversation, Melvin Williams, who the Officers did not know or recognize at the time, was observed walking toward them down the center of the street, holding his left hand inside of his shorts. Williams veered toward the driver's side of the van, but, after making eye contact with Krulock, changed direction and walked past the van and returned to the center of the street.

At that point, Krulock, with Schultz close behind, began to follow Williams on their bicycles. Krulock asked Williams to stop so the Officers could identify him. He also asked Williams to take his hand out of his pants. Williams removed his left hand from his pants, but, while doing so, turned away from Krulock. The Officer saw a clear plastic baggie fall to the ground from Williams's hand. Krulock decided then to detain Williams, and asked him to put his hands behind his back. Williams began to comply, but suddenly ran away. The Officers yelled for Williams to stop running. Schultz deployed his Taser to no avail. A chase ensued, in which Williams, with the Officers in hot pursuit, ran around a nearby

---

2. The Circuit Court held the additional hearings on 21 September 2010, 12 January 2011, and 10 March 2011. Williams's trial occurred on 4–5 May 2011.

3. The testimony of a third officer is not relevant for present purposes.

apartment building. Krulock's literal narrative picks up the "Cat Ballou-like" chase:

> We continued to pursue the subject on foot around the apartment building. We completely circled the apartment building that we were originally in front of. As we came around back to the area where we originally tried to detain him, one of the subjects as I mentioned earlier that we were talking to at the van, he came running along side [sic] the building and pursued the subject in front of us and he ended up tackling him and holding him down on to the ground for us to catch up.
>
> . . .
>
> As soon as we turned the corner we saw the subject that we were originally talking to holding the subject down on the ground who was attempting to get away at the time and then we approached him. I advised for the subject to get down on the ground and he refused to listen to my commands. Several times I then advised that he was going to be Tased if he did not listen to commands. He continued to ignore my commands. At that point I Tased him to gain compliance and detain him and end up getting the cuffs on him.

Krulock concluded by stating that he searched Williams's wallet, finding a fingernail-sized plastic bag containing crack cocaine.

At the close of the State's case-in-chief, Williams moved for judgment of acquittal on the resisting arrest count, arguing that the force used against the officers, if any, was de minimis. The Circuit Court denied the motion, finding that the use of force was a question of fact for the jury to decide.

Williams testified in his defense. Much of his testimony contradicted that of the Officers. In particular, although Williams admitted to running from the Officers, he did not admit to using force against the bystander who tackled him. On direct examination, Williams stated:

> I ran. Basically, when I got back into the middle of the street I gave up because I'm safe now, but a guy that I

remember when I was a little kid, he jumps on me. I gave up. I got my weight back from not using [drugs]. He was only like about 100 pounds and I was 250, real big. He didn't pin me nowhere. I gave up.

Williams testified similarly in response to cross-examination questioning regarding his arrest:

I ran back in the middle of the street by the civilians where everybody had a visual of what was going on with me.
. . .

I just gave up. I was laying on the ground. A citizen was supposedly holding me, a ond [sic] hundred pound pound [sic] guy.

Following his testimony, Williams rested his case and renewed his motion for judgment of acquittal on the resisting arrest count. The Circuit Court denied the motion for the same reasons as before.

The jury found Williams guilty on the counts of misdemeanor possession of cocaine and resisting arrest.[4] Following sentencing, Williams filed timely a notice of appeal to the Court of Special Appeals. Williams argued that the Circuit Court failed to comply with Maryland Rule 4–215(e) by not addressing his written request to discharge counsel. Further, he insisted that the State's evidence was insufficient to sustain his conviction on the charge of resisting arrest. The intermediate appellate court, in an unreported opinion initially, affirmed the judgment of the Circuit Court. The State filed a Motion to Designate for Reporting the Unreported Opinion. The Court of Special Appeals granted the State's motion and filed subsequently a reported opinion. *Williams v. State*, 208 Md.App. 622, 57 A.3d 508 (2012).

Williams sent a letter to this Court on 6 December 2012, which we treated as a Petition for Writ of Certiorari. We notified Williams that he had until 7 January 2013 to supplement his Petition. On that date, the Office of the Public

---

4. The jury acquitted Williams on the other two controlled substances violations.

Defender filed a Petition for Writ of Certiorari on behalf of Williams. We granted the Public Defender's Petition to consider the following questions:

Where Petitioner stated unequivocally and conspicuously his desire to discharge his attorney in a letter filed with the court, was the court required to comply with the requirements of Maryland Rule 4–215(e), without the need for Petitioner to repeat his request in open court?

Did the Court of Special Appeals misinterpret Maryland Code (2002, 2011 Cum.Supp.), Criminal Law Article, § 9–408 in upholding Petitioner's conviction for resisting arrest where the force allegedly used in resisting arrest was "employed against someone other than the police officer who is attempting to effectuate the arrest"?

*Williams v. State*, 430 Md. 644, 62 A.3d 730 (2013).

## STANDARD OF REVIEW

 We are called upon here to interpret provisions of the Maryland Rules and the Maryland Code. Our interpretations of both "are appropriately classified as questions of law." *Davis v. Slater*, 383 Md. 599, 604, 861 A.2d 78, 80 (2004). As such, "we review the issues [without deference] to determine if the trial court was legally correct in its rulings on these matters." *Id.*

 We use "the same canons and principles" of construction to interpret the Rules and the Code, as we do generally with legislation. *Pinkney v. State*, 427 Md. 77, 88, 46 A.3d 413, 420 (2012) (quoting *Knox v. State*, 404 Md. 76, 85–86, 945 A.2d 638, 644 (2008)); *see also Grade v. State*, 431 Md. 85, 102, 64 A.3d 197, 207 (2013) ("[T]he canons of construction applicable to statutes are equally applicable to rules."). We explained recently those canons and principles that are pertinent to this case:

We look to the plain meaning of the language employed in the[ ] rules and construe that language without forced or subtle interpretations designed to limit or extend its scope. We avoid a construction of a rule or statute that is unrea-

sonable, illogical, or inconsistent with common sense. We construe statutes and rules as a whole so that no word, clause, sentence, or phrase is rendered surplusage, superfluous, meaningless, or nugatory.

*Black v. State,* 426 Md. 328, 338–39, 44 A.3d 362, 368 (2012) (alteration in original) (internal citations and quotation marks omitted).

## ANALYSIS

### I.

We address first the question of whether Williams's letter to the Circuit Court was sufficient to require the Circuit Court to conduct an inquiry consistent with the rigors of Rule 4–215(e).

### A.

Williams advances four interlocking arguments in pursuit of his quest for a reversal of the judgment of the Court of Special Appeals based on the trial court's asserted non-compliance with Rule 4–215(e). First, he argues that, once Rule 4–215(e) is triggered, the court must inquire into the defendant's reasons for discharge. As Williams sees it, he triggered the Rule in the present case by "unequivocally and conspicuously stat[ing] his desire to discharge counsel." Second, he contends that the plain language of the Rule does not require that the modality of expression be oral and made in open court, nor does it require that the request, once made, need be repeated thereafter. Third, Williams claims that the Court of Special Appeals's reliance on *State v. Northam,* 421 Md. 195, 26 A.3d 344 (2011), is misplaced because we did not hold there that a trial court may ignore a request to discharge counsel when the request was sufficient to trigger Rule 4–215(e) at the time it was advanced. Fourth, Williams disagrees with the conclusion of the Court of Special Appeals that the four Circuit Court judges, who presided over the collective hearings and the trial that took place after the letter was received, could infer reasonably that any problems between Williams and his counsel were resolved after the letter was sent merely because

Williams did not reiterate subsequent displeasure or dissatisfaction with Janowich and allowed the representation to continue (even through trial), especially in view of defense counsel's ethical obligations under the Maryland Lawyers Rules of Professional Conduct to note for the court any discontent on his client's part.

The State counters that Williams did not trigger Rule 4–215(e) because he refrained from re-asserting the discharge of counsel issue during any of his five court appearances following sending the letter. In support of that argument, the State contends that Maryland case law, including *Northam*, creates an additional requirement for the defendant who expresses the desire to discharge counsel in a modality other than in open court, to "utter something in open court that can reasonably be construed as a present desire by the defendant to discharge counsel." By failing to reiterate his desire to terminate counsel's representation in open court, the State continues, Williams waived effectively his initial request. Urging us to reject Williams's assertion that the content of his letter is more direct than, and therefore distinguishable from, the letter at the heart of *Northam*, the State argues that the "motion" must be brought again to the court's attention regardless of how clearly and succinctly Williams styled it in his letter. The State contends also that it would be "absurd" to require that a trial court "should *sua sponte* involve itself in the attorney-client relationship," where defense counsel did not apprise the court of Williams's unhappiness with his representation.

### B.

The purpose of Rule 4–215 is to "protect that most important fundamental right to the effective assistance of counsel, which is basic to our adversary system of criminal justice." *Parren v. State*, 309 Md. 260, 281, 523 A.2d 597, 607 (1987). That right is guaranteed by the Sixth Amendment to the United States Constitution, which is applied to the states via the Fourteenth Amendment, and by Article 21 of the Maryland Declaration of Rights. *State v. Davis*, 415 Md. 22,

29, 997 A.2d 780, 784 (2010) (citing *Brye v. State*, 410 Md. 623, 634, 980 A.2d 435, 441 (2009)). Accordingly, "we have held consistently that the requirements of the Rule are mandatory," that its "mandates [ ] require strict compliance," and that "a trial court's departure from the requirements of Rule 4–215 constitutes reversible error." *Pinkney*, 427 Md. at 87–88, 46 A.3d at 419; *see also Davis*, 415 Md. at 31, 997 A.2d at 785 ("The failure to inquire into a defendant's reasons for seeking new counsel when the proper request has been made to the court is reversible error." (citing *Snead v. State*, 286 Md. 122, 131, 406 A.2d 98, 103 (1979))).

The first part of subsection (e) of Rule 4–215, the only provision of the Rule at issue in this case, states: "(e) Discharge of Counsel—Waiver. If a defendant requests permission to discharge an attorney whose appearance has been entered, the court shall permit the defendant to explain the reasons for the request." The Rule does not define "what level of discourse is required to discharge counsel." *State v. Campbell*, 385 Md. 616, 629, 870 A.2d 217, 224 (2005). Furthermore, a review of the Rule's history "contains no commentary on the meaning of the phrase 'requests permission to discharge an attorney.'" *Campbell*, 385 Md. at 628 n. 4, 870 A.2d at 224 n. 4.

Our prior interpretations of Rule 4–215(e) (and its predecessor, Rule 723c) assist, however, in clarifying what constitutes a cognizable discharge request under the Rule. We explained that a defendant need not "utter a talismanic phrase," *Leonard v. State*, 302 Md. 111, 124, 486 A.2d 163, 169 (1985), or "state his position or express his desire to discharge his attorney in a specified manner" to trigger the rigors of the Rule. *Davis*, 415 Md. at 32, 997 A.2d at 786. Moreover, a request to discharge an attorney need not be explicit. *See State v. Hardy*, 415 Md. 612, 623, 4 A.3d 908, 914 (2010) ("A defendant makes such a request when his or her statement constitutes more a declaration of dissatisfaction with counsel than an explicit request to discharge."). Rather, Rule 4–215(e) is triggered by any statement from which a court could

conclude reasonably that the defendant may be inclined to discharge counsel. *State v. Taylor,* 431 Md. 615, 634, 66 A.3d 698, 710 (2013); *Hardy,* 415 Md. at 623, 4 A.3d at 914; *Davis,* 415 Md. at 31, 997 A.2d at 785; *Leonard,* 302 Md. at 124, 486 A.2d at 169.

▬ Once Rule 4–215(e) is triggered, the trial court has an affirmative duty to address the defendant's request. As we explained in *Taylor,* when it is (or should be) clear objectively that a defendant is making a request to discharge counsel, "the defendant must be provided [ ] with a forum in which he or she (and/or counsel) may explain the underlying reasons for the purported request to discharge counsel." *State v. Taylor,* 431 Md. at 633, 66 A.3d at 709.

We held recently in *Northam* that the defendant's choice to send to the trial court a letter of a certain content did not trigger Rule 4–215(e), and therefore did not require an inquiry by the court. There, the defendant's writing, captioned as a Motion for Change of Venue, contained in its fourth and final paragraph, the following language:

Regardless of my race, gender, or ethnic belief I feel as a American citizen I have the right to be judge properly and be granted the ability to be represented by a Firm who has represented. Thereselves with Integerty and Justice. My Lawyers filed are updated but he has made no contact with me and trial is set at Sept 24 I'm requesting a Court appointed attorney and change of venue.

*Northam,* 421 Md. at 203, 26 A.3d at 348. The first three paragraphs of the letter concerned the defendant's request for a change of venue. The trial court denied Northam's "motion" in a simple order filed on 11 September 2008. *Id.* The transcript of a hearing held the following day contained no mention of Northam's expressed desire to discharge his counsel; a docket entry from that day, however, stated "Defendant consents to continued representation by [defense counsel]." *Northam,* 421 Md. at 203–04, 26 A.3d at 348–49. At a final pretrial hearing on 24 September 2008, Northam attempted to address the court, but was told by the judge to "talk to [his] lawyer," who in turn told the court that he needed to resolve

something with his client, and suggested that they may need a recess and reconvene the hearing. *Northam,* 421 Md. at 204–05, 26 A.3d at 349. No request to reconvene was made that day. *Northam,* 421 Md. at 205, 26 A.3d at 349. Northam stood for trial the next day and was convicted. *Id.* The Court of Special Appeals overturned, in an unreported opinion, Northam's conviction, holding that Northam's letter was sufficient to trigger a Rule 4–215(e) inquiry. *See Northam,* 421 Md. at 205, 26 A.3d at 350 (citing the opinion of the Court of Special Appeals).

On certiorari review, we reversed the judgment of the Court of Special Appeals. The Court agreed with the State's argument that Northam's "vague request, that he wanted a 'Court appointed attorney,' buried in the final sentence of the final paragraph of what was captioned and pled specifically and solely as a change of venue motion stands in stark contrast to other cases where 4–215 inquiries were mandated." *Northam,* 421 Md. at 206, 26 A.3d at 350. We considered other cases where we held that defendants waived the opportunity for rulings on particular written requests that were part of larger "omnibus" motions because the defendants failed to re-assert undecided motions in open court. Following our review of those cases, we noted that Northam failed to reiterate a request to discharge counsel in three appearances in open court after sending his letter. *Northam,* 421 Md. at 206–07, 26 A.3d at 350–51. Consequently, we accepted the State's argument that, in Northam's case, " 'Rule 4–215(e) was not implicated, much less violated, by the trial court.' " *Northam,* 421 Md. at 207, 26 A.3d at 351. Additionally, we refused to infer that Northam was attempting to request discharge of his counsel at the 24 September 2008 hearing when the judge cut him off because the court's "talk to your lawyer" response was an appropriate one under the circumstances, and because "we shall not infer that [defense counsel] failed to comply with the Maryland Rules of Professional Conduct." *Id.*

## C.

We agree with Williams that his letter was sufficient to trigger the requirements of Rule 4–215(e). His letter

stated clearly, solely, and unequivocally that he intended to discharge his counsel. Unlike Northam's fleeting reference in closing to wanting a "Court appointed attorney," Williams's request was neither vague nor embedded within extraneous matter in an unrelated written motion. Indeed, by stating that he was writing "to request New representation From the Public defender's office," and asking the court to "remove [Mr. Janowich] from [his] case," Williams posed a request that was just as explicit, focused, and direct in content, if not more so, than requests in other cases where we held that Rule 4–215(e) inquiries were necessary. *See, e.g., Hardy,* 415 Md. at 622, 4 A.3d at 914 (defendant stated that he was " 'thinking about changing the attorney or something' "); *Campbell,* 385 Md. at 632, 870 A.2d at 226 (defendant made several statements including "I don't like this man as my representative" and "[y]ou all wouldn't let me fire him"); *Williams v. State,* 321 Md. 266, 267, 582 A.2d 803, 804 (1990) (defendant stated to the court "I want another representative"). The only difference was that Williams chose a written form of expression.

The State's argument that Williams's letter was insufficient to trigger Rule 4–215(e) because the Rule requires that someone "utter something in open court that can reasonably be construed as a present desire by the defendant to discharge counsel" is well-intentioned, but unfounded. First, the plain language of the Rule states only that a court must inquire into the reasons for discharge "[i]f a defendant requests permission to discharge an attorney." Nowhere in the Rule does it state that such a request must be oral, as opposed to written, or made in open court. We decline to adopt the State's categorical view that an out-of-open-court, written request filed with the court cannot alone compel an inquiry and disposition by the court. The State bases its argument on the ground that our prior decisions in which we held that statements triggered Rule 4–215(e) all involved oral declarations made in open court. In none of those cases, however, were we called upon to consider whether the Rule meant that an oral declaration made in open court is the *only* way to invoke the Rule. Furthermore, when we stated in *Davis* that a request to

discharge counsel *"need not be made in writing* or even formally worded," 415 Md. at 31, 997 A.2d at 785 (emphasis added), the clear implication was that a written request may suffice under the Rule.

Here, Williams presented the Circuit Court with a request, in his own words, to discharge counsel. That Williams relayed those words by his pen, instead of his voice, is of no consequence. Moreover, that he delivered his request outside of open court is equally inconsequential. To hold otherwise would be to engraft impermissibly additional language into the Rule. *See, e.g., Bd. of Cnty. Comm'rs v. Marcas, L.L.C.,* 415 Md. 676, 685, 4 A.3d 946, 951 (2010) ("We neither add nor delete language so as to reflect an intent not evidenced in the plain and unambiguous language of the [Rule].").

Of course, a danger to be guarded against when a defendant chooses a letter format, rather than something stated plainly in open court, is the trial court being sandbagged or the "mine being salted." [5] Although perhaps unstated as such in *Northam,* there is an undercurrent to the Court's reasoning that burying such a request in a more expansive writing will not necessarily be cognizable as a Rule 4–215(e) trigger. Here, no such ulterior motive is so obviously present. Even if a defendant harbors a hope that a letter (even expressing succinctly the desire to fire present counsel) in the court jacket may go unobserved by a busy trial judge (or group of trial judges, as was the case here), a busy prosecutor, or his/her defense counsel, and thus create insurance guaranteeing a "do-over" if the defendant is convicted, that degree of slyness [6] can be protected against by reasonable diligence on the part of the other *dramatis personae* in criminal litigation, not the least of which could be the Clerk's Office transmitting the court jacket to a judge (with a copy of the letter appended

---

**5.** *See Webster's Ninth New Collegiate Dictionary* 1038 (1989) (defining "salt" as "to enrich (as a mine) artificially by secretly placing valuable mineral in some of the working places").

**6.** Williams does not resemble even vaguely Lex Luthor, the human criminal mastermind and nemesis of Superman.

to the front) when a document such as was filed here is received.

Second, the State's reliance here on the need for a defendant to indicate a "present desire" to discharge counsel misconstrues our decisions. We noted in *Davis* that, to trigger Rule 4–215(e), a statement must indicate the defendant's "present intent to seek a different legal advisor." 415 Md. at 33, 997 A.2d at 786. In that case, defense counsel told the administrative judge, on the morning of trial, that the defendant indicated, in a prior conversation, that he "[w]anted a jury trial and new counsel," and that "I told him it was very unlikely that the Court was going to award him another attorney in this case." 415 Md. at 27, 997 A.2d at 782. Thus, the first representation to the court that the defendant intended to discharge his counsel was expressed in the past tense and was unclear as to whether the defendant still harbored that intent. We concluded that, although Rule 4–215(e) does not mandate an inquiry where the court is informed only of a prior intent to discharge counsel, "the Court at least was required to inquire further so it could determine whether Davis still maintained that intent." *Davis*, 415 Md. at 33, 997 A.2d at 786.

Williams's request was written and expressed in the present tense. It would be illogical to hold that a court may allow a defendant's expression of a present desire to discharge counsel (sufficient to trigger Rule 4–215(e)) to moulder into a past desire (not sufficient to trigger the Rule) by neglecting, overlooking, or otherwise failing to address promptly the defendant's clear request. Moreover, even if we were to accept the argument that Williams's aged request reflected a past desire, *Davis* requires that the court determine, at some point prior to trial, whether Williams continued to harbor an intent to discharge counsel.

The Court of Special Appeals erred by relying too uncritically on *Northam*. We did not hold in *Northam* that a request to discharge counsel must be made orally or in open court; nor did we hold that a request sufficient to trigger Rule

4–215(e) may be waived effectively by failure to repeat it or otherwise bring it to the court's attention once filed in writing. We concluded that Northam's written request was insufficient to trigger Rule 4–215(e) because it was vague and obscured by the larger body of the written motion captioned as (and concerned with) a Motion for Change of Venue. We touched briefly upon the matter of waiver in *Northam* only in the context of omnibus motions, where, like Northam's request for a "Court appointed attorney," a single sentence request or issue is concealed or obscured by other issues in the particular form where it is raised. Williams's request does not suffer from the problems of vagueness or obscurity—his request is singular and unambiguous. Any argument to the contrary is belied by the Circuit Court Clerk's docket entry on 29 January 2010 reflecting the filing of a "Letter of Defendant requesting new representation from the public defender's office." Because we conclude that Williams's letter was sufficient for the Circuit Court to recognize it as a request to discharge counsel, the onus was on the Circuit Court to "permit the defendant to explain the reasons for the request." Md. Rule 4–215(e). By failing to do so, the Circuit Court violated the Rule.

Additionally, we agree with Williams's argument that the Court of Special Appeals erred by concluding that "it was reasonable for the trial court to infer that any issues between the appellant and Mr. Janowich had been resolved, and that [Williams] was assenting to his continued representation by Mr. Janowich." *Williams*, 208 Md.App. at 634, 57 A.3d at 516. That conclusion assumes too much. More specifically, it assumes that at least one of the judges who presided over the hearings and the trial read the letter, which the intermediate appellate court could not confirm based on the record.[7] If a

---

7. Although it is unclear from the record whether any of the Circuit Court judges read the letter, it is clear from our opinions that evidence of date-stamping or other handling of the letter by the court's clerk can be sufficient to charge the Circuit Court with receipt of the letter. *See, e.g., Denicolis v. State*, 378 Md. 646, 658, 837 A.2d 944, 951 (2003) (concluding that a jury note marked as a court exhibit and included in the record was received by the circuit court for the purposes of Md.

Circuit Court judge did read the letter, that judge could not assume that Williams and Janowich ever discussed, and resolved subsequently, the reasons for the discharge request. It is possible that Williams sent the discharge request directly to the court because he was uncomfortable discussing the request with, or in front of, Janowich. Because the Circuit Court did not confirm whether Janowich was aware of the request, it could not presume or rely on Janowich's ethical obligation to disclose the request, under the Maryland Lawyers Rules of Professional Conduct,[8] as proof that Williams abandoned his intent to seek new counsel.

Based on the record in the present case, we do not know whether the absence of a Rule 4–215(e) inquiry by the Circuit Court was the result of an oversight, a mistake, the adoption of what Williams calls a "wait-and-see approach," or some other reason. Similarly, we do not know whether Williams refrained from repeating his desire in open court because he changed his mind, thought the court denied implicitly his request, thought that pressing the issue further would anger the court or Janowich, or he was adopting his own "wait-and-see approach," hoping to use the court's failure to respond to his letter as grounds to reverse a potential conviction. Most

---

Rule 4–326(d)); *cf. Fitzgerald v. Somerset Cnty. Sanitary Comm'n,* 231 Md. 242, 246, 189 A.2d 601, 603 (1963) ("Payment to the clerk is payment to the court of which he is an agent[.]"). Not only was Williams's letter date-stamped by the Clerk of the Circuit Court, it was noted accurately and clearly in a docket entry. Moreover, neither of the parties dispute that the Circuit Court received Williams's letter.

8. In *Garner v. State,* 414 Md. 372, 373, 995 A.2d 694 (2010), we discussed a lawyer's ethical obligations under similar circumstances in the context of a trial court's compliance with Md. Rule 4–215(a)(3):

Members of the Maryland Bar are officers of the court who have an obligation to comply with the Rules of Professional Conduct. While serving as Petitioner's trial counsel, Rule 1.2 required that [defense counsel] abide by Petitioner's decision concerning the services to be performed on Petitioner's behalf, and Rule 3.3 prohibited [defense counsel] from making a false statement to the Circuit Court. When [Petitioner's trial counsel] stated "I'm still in the case[,]" the Circuit Court was entitled to rely upon that statement and was not required to make further inquiry.

414 Md. at 390, 995 A.2d at 705.

importantly, we do not know all of Williams's reasons for requesting the discharge in January 2010 and whether they were meritorious—the purpose behind the mandates of Rule 4-215(e).

We hold that Williams's unambiguous and to-the-point letter was sufficient, on its own, to constitute a request to discharge counsel under Rule 4-215(e). The Circuit Court's failure to inquire into the reasons for that request before trial, in accordance with the Rule, is reversible error.

## II.

The second question before us arises from circumstances that are atypical and extraordinary in contemporary society. A bystander, of his own volition and without prompting from law enforcement officers, intervened physically to assist officers in effectuating an arrest.[9] We are asked to decide the novel question of whether force used by the arrestee against the volunteer in this case can support a conviction for resisting arrest under Maryland's resisting arrest statute.

## A.

Williams urges us to hold that the Court of Special Appeals erred when it concluded that the use of force necessary to prove a resisting arrest charge may be force "employed against someone other than the police officer who is attempting to effectuate the arrest." In support of that argument, Williams contends that the intermediate appellate court's conclusion misinterprets the plain language of Md.Code, Criminal Law Art., § 9-408. Williams points to the language of resisting arrest statutes in other jurisdictions to justify his interpretation of the plain language of § 9-408. Furthermore, Williams claims that the holding of the Court of Special

---

9. That sort of conduct may be frowned upon by law enforcement as a matter of general policy (and be dangerous to the civilian as well), although cooperation with law enforcement in its investigations is desirable generally.

Appeals is inconsistent with the common law of Maryland and the General Assembly's purpose in enacting § 9–408.

Not surprisingly, the State disagrees with Williams's reading of the plain language of § 9–408, and argues that the Court of Special Appeals interpreted correctly the language of subsection (b)(1), which contains no reference to police officers as the sole objects of the prohibited force. The State refutes similarly Williams's reliance on foreign statutes, his claims regarding the purpose of § 9–408, and his interpretation of Maryland common law. Moreover, the State urges us to uphold the judgment of the Court of Special Appeals based on our recent opinion in *Nicolas v. State,* 426 Md. 385, 44 A.3d 396 (2012).

## B.

The General Assembly enacted Maryland's resisting arrest statute in 2004. The statute reads, in full:

(a) *"Police officer" defined.*—In this section, "police officer" means an individual who is authorized to make an arrest under Title 2 of the Criminal Procedure Article.

(b) *Prohibited.*—A person may not intentionally:

(1) resist a lawful arrest; or

(2) interfere with an individual who the person has reason to know is a police officer who is making or attempting to make a lawful arrest or detention of another person.

(c) *Penalty.*—A person who violates this section is guilty of a misdemeanor and is subject to imprisonment not exceeding 3 years or a fine not exceeding $5,000 or both.

(d) *Unit of prosecution.*—The unit of prosecution for a violation of this section is based on the arrest or detention regardless of the number of police officers involved in the arrest or detention.

Md.Code (2002, 2011 Cum.Supp.), Criminal Law Art., § 9–408. Although the General Assembly changed the common law by criminalizing third-party interference with a lawful arrest in § 9–408(b)(2), it did not alter by enacting subsection (b)(1) the

common law elements of the crime of resisting arrest. *McNeal v. State,* 200 Md.App. 510, 526, 28 A.3d 88, 97 (2011).

The year before the General Assembly enacted § 9-408, we considered the common law elements of resisting arrest in *Purnell v. State,* 375 Md. 678, 827 A.2d 68 (2003). We compared analyses of the elements of the offense in *Preston v. Warden of the Maryland House of Correction,* 225 Md. 628, 629, 169 A.2d 407, 408 (1961), where we stated that the elements are " 'refusal to submit to lawful arrest and resistance to an officer of the law in the performance of his duties,' " and *Barnhard v. State,* 325 Md. 602, 609-10, 602 A.2d 701, 704-05 (1992), where we approved a jury instruction stating the elements as: "(1) the defendant was arrested; (2) the arrest was lawful; and (3) the defendant refused to submit to the arrest.' " *Purnell,* 375 Md. at 695, 827 A.2d at 78. We adopted as the elements of the offense the *Barnhard* formulation. *Id.* Explaining our adoption of the *Barnhard* elements, we noted that "[u]nlike the statement of the elements made by the *Preston* Court, *Barnhard's* formulation does not refer to a 'law enforcement officer,' as the object of the resistance." *Purnell,* 375 Md. at 695-96, 827 A.2d at 78. The statement of the elements expressed in *Barnhard,* and adopted in *Purnell,* constituted the common law elements of the crime of resisting arrest at the time that the Legislature codified it in 2004.

## C.

We reject the State's argument that we may decide this case based on *Nicolas.* In that case, we compared the elements of second degree assault and resisting arrest to determine whether the offenses merge for sentencing purposes. In doing so, we stated "we agree with the State's contention that the force element of resisting arrest need not always constitute second degree assault against a law enforcement officer." 426 Md. at 407, 44 A.3d at 409. The State submits that this statement in *Nicolas* is the equivalent of the Court of Special Appeals's holding in this case that "[t]he necessary force [to sustain a conviction for resisting arrest] may be employed against someone other than the police officer who is attempt-

ing to effectuate the arrest." *Williams*, 208 Md.App. at 642, 57 A.3d at 520. *Au contraire. Nicolas* did not require us to contemplate the use of force against persons other than law enforcement officers. We decline to be circumscribed by that literal statement under the circumstances and context of this case.

We do agree, however, with the State's argument that Williams misreads the plain language of § 9–408(b)(1). Williams makes much of the fact that Maryland's resisting arrest statute contains a definition of the term "police officer" in subsection (a), and uses that term in subsections (b)(2) and (d). He argues, essentially, that the presence of the term "police officer" in those subsections suggests that the Legislature intended subsection (b)(1) to subsume and apply only to police officers. Williams points out that the definition of "police officer" from the Criminal Procedure Article, cross-referenced in § 9–408(a), does not include civilians who, like the gentleman in the present case, intervene with the apparent intent of helping police officers to effectuate an arrest. *See* Md.Code (2001, 2008 Repl.Vol.), Criminal Procedure Art., § 2–101(c). The definition of the term "police officer" and subsequent uses of that **term** in § 9–408, however, belies Williams's argument.

Section 9–408(a) states, "[i]n this section, 'police officer' means ... [,]" for the purposes of ascribing a particular meaning to the term "police officer" whenever it is used actually in the resisting arrest statute. But the Legislature did not include the term "police officer" in subsection (b)(1), the provision of the statute implicated in this case; rather, § 9–408(b)(1) states simply that it is a crime to "resist a lawful arrest." Because the term "police officer" is included in subsections (b)(2) and (d), we presume that the General Assembly would include the term also in subsection (b)(1) if it intended police officers to be sole subjects of the resistance. By leaving the term "police officer" out of subsection (b)(1), the General Assembly fashioned a statute that was consistent with the common law elements of resisting arrest as defined in *Purnell,* and our conclusion there that "resisting arrest is, in

short, an offense against the State and not personally against the officers." 375 Md. at 698, 827 A.2d at 80.[10]

Reviewing the many statutes Williams cites from other states does not change our view of the plain language of § 9–408(b)(1). Even if we were to look to those statutes for guidance in our plain language analysis, which we need not do, we are not persuaded by the arguments Williams derives from their language.[11] We are unwilling to conclude that the Maryland Legislature intended § 9–408(b)(1) to criminalize only force used against police officers because it could have adopted language similar to those states whose resisting arrest statutes refer to the use of force "against the peace officer or another," if it wanted to include civilians. *See, e.g.,* Ariz.Rev.Stat. Ann. § 13–2508 (2003) (West). Nor are we convinced, as Williams urges, that § 9–408(b)(1) applies only to force used against police officers because Delaware's resisting arrest statute refers to "peace officer[s]," and a reference in the General Assembly's Fiscal Policy Note states that the members of the House subcommittee who recommended the original resisting arrest bill in Maryland "loosely based their recommendation on Delaware's codification."[12] We have no clear indications concerning which aspects of the totality of

---

**10.** The Legislature's definition of "police officer" and use of that term in § 9–408 is logical and understandable because the vast majority of arrests are affected by police officers as modalities of the State's power of arrest.

**11.** His arguments are weakened further by the fact that he cites to 2012 and 2013 versions of those foreign statutes, which offer no illumination necessarily on what the Maryland Legislature did by enacting § 9–408 in 2004.

**12.** During the time the Maryland Legislature may have considered Delaware's resisting arrest statute in the course of considering its resisting arrest statute in 2004, Delaware's statute read:

A person is guilty of resisting arrest when the person intentionally prevents or attempts to prevent a peace officer from effecting an arrest or detention of the person or another person or intentionally flees from a peace officer who is effecting an arrest.

Resisting arrest is a class A misdemeanor.

Del.Code Ann. tit. 11 § 1257 (2004).

§ 9–408 may be "loosely based" upon Delaware's resisting arrest statute. One of the most glaring of the myriad differences between § 9–408 and the pertinent parts of Delaware's statute is the conspicuous absence of "peace officer," or any similar term, in subsection (b)(1).

Williams does not challenge whether the officers were acting lawfully when they arrested him; nor does he challenge whether the intervention of the bystander who tackled him constituted a citizen's arrest, and, if so, whether such an arrest would be a "lawful" one under § 9–408(b)(1).[13] Therefore, we shall assume, for present purposes, that the police officers were attempting lawfully to arrest Williams, and need only consider whether the requisite resistance-by-force element was proved under the circumstances of this case.

Assuming the arrest of Williams was lawful, we do not think the General Assembly intended to preclude a resisting arrest charge arising under the peculiar facts of this case. We agree with the Court of Special Appeals's conclusion that "[t]he plain language of [§ 9–408(b)(1) ] does not specify that a defendant may be found guilty of resisting arrest only if he employs force against the police officer who is attempting to arrest him." *Williams v. State,* 208 Md.App. at 641, 57 A.3d at 520. It is reasonable to conclude from the evidence presented at Williams's trial that: (1) the bystander was aware that Krulock and Schultz were attempting to arrest Williams; (2) he tackled voluntarily Williams with the intent of helping the officers effectuate the arrest; (3) Williams used physical force against the bystander in the ensuing struggle; and, (4)

---

**13.** We defined a lawful citizen's arrest in *Great Atlantic and Pacific Tea Co. v. Paul:*

> In Maryland a private person has authority to arrest without a warrant only when a) there is a felony being committed in his presence or when a felony has in fact been committed whether or not in his presence, and the arrester has reasonable ground (probable cause) to believe the person he arrests has committed it; or b) a misdemeanor is being committed in the presence or view of the arrester which amounts to a breach of the peace.

256 Md. 643, 655, 261 A.2d 731, 738–39 (1970).

Williams's use of force was for the purposes of resisting the imminent arrest by the officers who were in hot and close pursuit. We hold that, on the record of the present case, the Court of Special Appeals did not misinterpret the plain language of § 9–408(b)(1).

**JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED IN PART AND AFFIRMED IN PART. CASE REMANDED TO THE COURT OF SPECIAL APPEALS WITH DIRECTIONS TO REVERSE THE JUDGMENT OF THE CIRCUIT COURT FOR HARFORD COUNTY AND REMAND THE CASE TO THAT COURT FOR FURTHER PROCEEDINGS NOT INCONSISTENT WITH THIS OPINION. THE COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS TO BE DIVIDED EQUALLY BY THE PARTIES.**